ST. AUGUSTINE'S CENTER FOR AMERICAN INDIANS, INC., Plaintiff-Appellant, *v.* THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 82—1356

Opinion filed May 10, 1983.—Rehearing denied June 9, 1983.

A. Bruce White, of Karaganis, Gail & White, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Scott J. Linn, Special Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This is an appeal from the circuit court's affirmance of a determination made by defendant, the Illinois Department of Labor, that plaintiff, St. Augustine's Center for American Indians, Inc., is not exempt from paying employer's contributions under the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 300, *et seq.*).

Plaintiff was founded in 1962 in Chicago by an Episcopal priest, Father Peter J. Powell.[1] According to the bylaws, it was "established to provide counseling, casework and supportive services, and scholarship aid for American Indians, primarily those resident in Chicago." Plaintiff is a separate legal entity with the backing of the Episcopal Church of Chicago. The Bishop of the Episcopal Diocese of Chicago is an *ex officio* member of the board of trustees, an *ex officio* member of the corporation and its *ex officio* president. All members of the corporation and at least two-thirds of the board of trustees must be members of the Episcopal Church.

The building plaintiff owns and uses for its activities has three stories with a chapel on the first floor. Approximately 2,500 American Indian families are helped annually by plaintiff, by means of monetary assistance, food, clothing, job training, counseling and other services. Mass is offered in the chapel twice daily and on Sundays; confessions are heard at least once weekly and priests offer the full range of sacraments.

In late 1974, upon learning of a change in the Unemployment Compensation Act (Act), plaintiff contacted defendant in order to obtain a determination of whether it was exempt from coverage. After initially being told that it was exempt, plaintiff was notified on September 28, 1978, that it was covered under the Act and an assessment and demand for payment of unpaid contributions was made for the period covering November 1, 1974, through August 1, 1978. Since that date, plaintiff has been paying the contribution voluntarily, but filed a timely protest to the determination and the assessment.

On February 22, 1979, a hearing was held before the Director's representative, during which plaintiff presented documentary and tes-

---

[1]Father Powell has devoted his entire lifetime to the study and service of American Indians and is a noted author and historian specializing in the history of the Cheyenne.

timonial evidence. Plaintiff argued that it was exempt from paying contributions under section 211.3(A)(2) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 321.3(A)(2)) as an organization operated primarily for religious purposes. On January 29, 1980, the Director's representative issued his report which contained the finding that plaintiff was not operated primarily for religious purposes and the recommendation that a minor modification be made to the Department's assessment. On February 15, 1980, before the period allowed for filing objections to the report had expired, the Director rendered a final decision affirming the representative's report. On February 22, 1980, plaintiff filed its timely objections to the report.

Plaintiff filed a complaint for administrative review in the circuit court of Cook County. The trial court remanded the matter to the Department because it failed to consider plaintiff's objections before affirming the report of the Director's representative. After the Director overruled plaintiff's objections, oral argument was held in the circuit court on plaintiff's amended complaint. On May 3, 1982, a final order was entered by the trial court affirming defendant's decision and assessing the amount of $11,030.72 plus costs for unpaid unemployment insurance contributions and interest.

### STATUTORY HISTORY

Prior to January 1, 1972, section 221 of the Unemployment Compensation Act exempted services performed for a "foundation, organized and operated exclusively for religious, charitable *** or educational purposes ***." (Ill. Rev. Stat. 1969, ch. 48, par. 331.) As a result of changes in the Federal Employment Security Amendments of 1970, all States were required to extend, by 1972, State unemployment insurance coverage to nonprofit organizations. In response, Illinois amended section 221 of the Act to no longer apply to services performed in the employ of a nonprofit organization. Section 211.2 of the Act provides that the term "employment" does include services performed by individuals working for a nonprofit organization that is "organized and operated exclusively for religious, charitable *** purposes ***." Ill. Rev. Stat. 1981, ch. 48, par. 321.2.

The next section, 211.3(A)(2), however, allows for a religious organization exemption and states that "employment" shall not include services performed in the employ of an organization "which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches." (Ill. Rev. Stat. 1981, ch. 48, par. 321.3(A)(2).) The second of the dual requirements, concerning control or supervi-

sion by a church, is not being questioned in this appeal, as the Department conceded that plaintiff meets this prerequisite. The sole issue with regard to the statute, therefore, is whether the trial court correctly agreed with the Director that plaintiff is not "operated primarily for religious purposes." Plaintiff also argues on appeal that this decision was against the manifest weight of the evidence. For further history of the Act and the historical context of unemployment insurance programs, see *Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 777-78, 439 N.E.2d 975.

I

The portion of the Act involved in this appeal (Ill. Rev. Stat. 1981, ch. 48, par. 321.3(A)(2)) had not been judicially construed in Illinois at the time both the Director and the trial court made their respective decisions in regards to plaintiff's exemption under it. This section has been subsequently examined by this court in *Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 439 N.E.2d 975 (*Community Renewal*). Relying upon this case, plaintiff argues that the Director utilized an erroneous standard which would, as in *Community Renewal*, warrant a reversal of the Director's decision.

The following well-established rules of statutory construction are applicable in this situation: the Unemployment Compensation Act is a benevolent attempt to shield unfortunate persons from economic burdens caused by involuntary unemployment; the statute must be liberally construed with this objective in mind; the burden of proving a tax exemption is upon the one claiming it; exemption statutes are strictly construed; and debatable questions are resolved in favor of taxation. *Ducks Unlimited, Inc. v. Grabiec* (1971), 133 Ill. App. 2d 134, 140, 272 N.E.2d 657.

It is also well established that the role of the courts, in reviewing administrative decisions, is not to weigh the evidence, but is limited to ascertaining whether the agency's findings are against the manifest weight of the evidence. (*Degrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522.) The conclusions of the agency on questions of fact are held to be *prima facie* true and correct. Ill. Rev. Stat. 1981, ch. 110, par. 274.

This court in the *Community Renewal* case determined that based upon the Illinois statutory amendment to section 211.3(A)(2) of the Act, which adopted verbatim the language in the Federal Unemployment Tax Act (FUTA) exemption, the previous Illinois cases which construed the phrase "religious purposes" were no longer controlling. (*Community Renewal Society v. Department of Labor* (1982), 108 Ill.

App. 3d 773, 779.) The Director of the Department of Labor in that case erroneously based his interpretation of the statute upon language in *People ex rel. McCullough v. Deutsche Evangelisch Lutherische Jehovah Gemeinde Ungeaenderter Augsburgischer Confession* (1911), 249 Ill. 132, 137, 94 N.E. 162, which held that "religious purpose" meant use of the property for "public worship, Sunday schools and religious instruction." The *Community Renewal* court recognized that this error of law affected the Director's deliberations and thus his decision had to be overturned. *Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 778-80.

Plaintiff strenuously contends that in the instant case, the Director likewise applied an erroneous standard. Plaintiff points to several comments the Director made during the hearing as well as to several references in the report to support this contention: for example, the Director's representative framed the issue as whether plaintiff is a "nonprofit corporation under the Act organized and operated primarily for charitable purposes"; the representative focused upon plaintiff's bylaws and articles of incorporation; the representative utilized the narrow definition of "religious purpose" as use of property "for public worship, Sunday schools and religious instruction," quoting *People ex rel. Carson v. Muldoon* (1922), 306 Ill. 234, 238, 137 N.E. 863; and that the representative's conclusion stated that "we conclude, *based on petitioner's corporate charter and by-laws*, that it is a charitable not-for-profit corporation whose primary purpose is to assist American Indians in the Chicago area." (Emphasis added.)

During the review of the Department's decision, the trial court agreed with plaintiff that "the nature of St. Augustine's organization should not have been dispositive." After noting the legislative changes in the statute which deleted the organization and exclusivity requirements in section 211.3 of the Act, the trial court nevertheless affirmed the agency's decision because it could not conclude that the representative's decision was premised solely on plaintiff's organizational structure. The court commented that in light of all the evidence that was presented regarding plaintiff's actual functions and activities, "[e]ven without considering the charter and by-laws this Court concludes that the evidence supports the Director's decision that St. Augustine's is operated primarily for charitable purposes." The trial court agreed with the Director's finding that the religious services which plaintiff offered "were only incidental to the Center's primary charitable function of providing secular assistance and benefits to American Indians." The trial court therefore affirmed the Department's decision as not being against the manifest weight of the evi-

dence.

After a review of the record, we conclude that the trial court was correct in its analysis of the law and the record. We have considered the numerous cases plaintiff cites from other jurisdictions which, like *Community Renewal*, reject the narrow definition of "religious purposes" as being limited to public worship and religious instruction activities. We agree with the Ohio Court of Appeals that the terms "charitable" and "religious" are not mutually exclusive and that "[i]t is true that the mere fact that an organization is charitable does not necessarily mean that it is religious, but, conversely, the fact that an organization is charitable does not preclude it from being religious." (*St. Vincent DePaul Shop v. Admr.*, Unempl. Ins. Rep. (CCH) par. 8914, at 38, 676 (Ohio Ct. App. Sept. 17, 1974).) While the record in the instant case indicates that plaintiff offers religious services, we agree with the conclusion that the "primary" purpose of the Center is to offer social services and the religious purpose is only secondary. As one court noted, the use of the word "primarily" necessarily contemplates an additional attribute and means "of first importance" as opposed to "secondarily." *Department of Employment v. Champion Bake-N-Serve, Inc.* (1979), 100 Idaho 53, 55, 592 P.2d 1370, 1372.

Plaintiff's assistant director testified at the hearing before the Director's representative that "the emphasis, thrust of the program and the main goal of the program is the same. To help out American Indian families who are coming to Chicago to achieve a better life, both morally, spiritually and physically." The fact that religious services and guidance are provided by the plaintiff does not preclude a determination that the Center's primary goal is to provide secular[2] assistance to American Indians in the Chicago area.

We also note that the report of the House Ways and Means Committee on the Employment Security Amendments of 1970, relied upon in *Community Renewal* because of the close causal relationship between FUTA and our Act, offers this guideline as to what services would be exempt which were performed for organizations "operated primarily for religious purposes":

> " '***[A] church related (separately incorporated) charitable organization (such as, for example, an orphanage or a home for the aged) would not be considered under [section 3309(b)(1) of FUTA] to be operated primarily for religious purposes.' " *Com-*

[2]One definition given for the term "secular" is "of or relating to the worldly or temporal as distinguished from the spiritual or eternal." Webster's Third New International Dictionary 2053 (1971).

*munity Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 781.

Keeping in mind that each tax-exemption case must be determined on its individual facts (*Inter-Varsity Christian Fellowship of the United States v. Hoffman* (1978), 62 Ill. App. 3d 798, 801, 379 N.E.2d 813), we conclude that the record supports the Department of Labor's decision and the trial court's well-reasoned judgment that plaintiff is not exempt under section 211.3(A)(2) of the Unemployment Insurance Act.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.