CONCORDIA ASSOCIATION, Plaintiff-Appellant, v. SALLY A. WARD, Director, *et al.*, Defendants-Appellees (Frank Piotter *et al.*, Defendants).

First District (4th Division)   No. 88—0850, 88—1593 cons.

Opinion filed December 15, 1988.

James L. Brendemuhl, of Boeger, Heerwagen, Lusthoff & Brendemuhl, P.C., of Riverside, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert Ruiz, Solicitor General, and Jerome J. Webb, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

■ The plaintiff, Concordia Association, appeals from the circuit court's affirmance of a determination made by the defendant, the Illinois Department of Employment Security (Department), that Concordia is not exempt from paying employer's contributions under the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1987, ch. 48, par. 300 *et seq.*). Section 211.3(A)(2) of the Illinois Unemployment Insurance Act grants an exemption from participation in the unemployment insurance program for any organization which: (1) is operated primarily for religious purposes and (2) is operated, supervised, controlled or principally supported by a church or convention or association of churches. Ill. Rev. Stat. 1987, ch. 48, par. 321.3(A)(2).

■ The Department found that while Concordia satisfied the second requirement, it was not entitled to an exemption because it failed to satisfy the first requirement. Because this appeal involves a review of an administrative agency's decision, the issue is whether the Department's finding that Concordia is not operated primarily for religious purposes is contrary to the manifest weight of the evidence. *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.

Concordia Association is an Illinois corporation which was established in the late 1800s by several Chicago-area Lutheran churches. The purpose of the association as stated in the bylaws is to "operate and maintain a cemetery." The articles of incorporation state that the association was formed "to acquire or receive *** real and personal property for cemetery, charitable, educational or such other corporate purposes generally."

Concordia is made up of 36 delegates, six delegates from each of the six Lutheran churches which currently form the corporation. It is run by a board of directors composed of one delegate from each of the congregations. There is no requirement that either delegates or ministers must be board members, but at various times there have been ministers as delegates or board members.

In order to be buried in Concordia's cemetery, one must be of the

Lutheran faith or a family member of a Lutheran. Free burials are provided for ministers and teachers. Lutheran burial services can be held at a funeral home, church, grave site or chapel. Most burials are conducted with the services of a Lutheran minister although Concordia, which does provide a chapel on the cemetery grounds, neither offers nor performs any religious services. Any service performed for a burial must be Christian and is arranged by the family of the deceased.

Concordia exists financially through sales of cemetery merchandise such as lots, caskets and flowers and through sales of services to the lot owners such as watering, grass cutting and planting. Any monies in excess of what is needed to operate the cemetery and maintain a reserve fund for perpetual care of the lots goes to the individual member churches comprising the association. These six Lutheran churches do not contribute financially to Concordia. However, when the association was originally founded, the churches would assist Concordia financially if necessary.

At the administrative hearing the current manager of the cemetery testified that the congregations of Lutheran churches originally formed Concordia so that they would always have a cemetery large enough to accommodate all the members of their particular congregation because each congregation had a limited amount of land surrounding the premises on which that particular church was located. Testimony was also presented that the Lutheran faith considers the act of burial as the third part of one religious service, with the first part consisting of the wake of the deceased member at the funeral home and the second part being the religious service at the funeral home or church.

An attorney for Concordia also testified that the bylaws have recently been amended to state that the purpose and object of the corporation is to operate and maintain a cemetery which provides Christian burials for Lutherans and members of their families. However, no amended bylaws were ever presented at the administrative hearing nor does Concordia point to where they would be found in the record on appeal.

■ Concordia argues, and we agree, that the starting point in construing the phrase "operated primarily for religious purposes" is *Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 439 N.E.2d 975.

In *Community Renewal* this court rejected the narrow definition of "religious purposes" which had been applied in previous cases. In rejecting a definition which limited "religious purposes" to public wor-

ship and religious instruction activities, the court in *Community Renewal* decided upon a flexible approach and concluded that each organization must be examined on a case-by-case basis. Because the administrative agency in *Community Renewal* had applied the narrow definition, the case was remanded for further proceedings to consider such things as the legal structure of the organization, the relationship between the organization and the individual church groups as well as the members of the church, and the actual operations of the organization.

This flexible approach in defining the phrase "operated primarily for religious purposes" was applied in *St. Augustine's Center v. Department of Labor* (1983), 114 Ill. App. 3d 621, 449 N.E.2d 246. St. Augustine's Center (the Center) was founded by an Episcopal priest and according to its bylaws was established for the purpose of providing " 'counseling, casework and supportive services, and scholarship aid for American Indians, primarily those resident in Chicago.' " (114 Ill. App. 3d at 622, 449 N.E.2d at 246.) The Center is a separate legal entity with the backing of the Episcopal Church of Chicago. The bishop of the Episcopal Diocese of Chicago is an *ex officio* member of the board of trustees, an *ex officio* member of the corporation and its *ex officio* president. All members of the corporation and at least two-thirds of the board of trustees must be members of the Episcopal church. Approximately 2,500 American Indian families are helped through the Center by means of monetary assistance, food, clothing, job training, counseling and other services. The assistant director testified that the main goal of the Center was to help American Indian families achieve a better life morally, spiritually and physically. The Center owns a three-story building with a chapel where Mass is offered twice daily and on Sundays, confessions are heard weekly and other sacraments are administered.

In concluding that the Center was not operated primarily for religious purposes under section 211.3(A)(2), this court concluded that the religious services were only incidental to the Center's primary charitable function. The court further stated that the use of the word "primarily" necessarily contemplates an additional attribute and means "of first importance" as opposed to "secondarily." 114 Ill. App. 3d at 626, 449 N.E.2d at 249.

The court in *St. Augustine's* also noted that the Unemployment Insurance Act should be liberally interpreted in favor of awarding benefits to unemployed workers and exemption statutes should therefore be strictly construed. 114 Ill. App. 3d at 624, 449 N.E.2d at 248.

■ With this background we turn to the facts in the instant case and conclude that the Department's finding that Concordia is not operated primarily for religious purposes is not contrary to the manifest weight of the evidence.

Concordia operates a cemetery. Burial of the dead is a matter of public concern. (*Davie v. Rochester Cemetery Association* (1941), 91 N.H. 494, 495, 23 A.2d 377, 378; *Christgau v. Woodlawn Cemetery Association* (1940), 208 Minn. 263, 267, 293 N.W. 619, 621.) The functions performed by Concordia are no different than those performed in a secular cemetery. Although religious services are performed in conjunction with many of the burials and a chapel is available at the cemetery, Concordia takes no part in planning any of these religious services. Concordia sells cemetery merchandise and maintains the cemetery plots. The dominant purpose of Concordia is to furnish a burial place for the dead. Any religious purpose identified with Concordia's history, its ongoing activities, or its connection with the Lutheran congregations which make up the association is "secondary" to the primary purpose of this association to operate a cemetery.

■ Concordia argues that the fact it is given exemption status under Federal and State income tax statutes is controlling in determining whether it is entitled to an exemption under section 211.3(A)(2). Exemption status from income tax is not conclusive as to unemployment exemption. (*Ducks Unlimited, Inc. v. Grabiec* (1971), 133 Ill. App. 2d 134, 272 N.E.2d 657.) Further, as stated above, the rule of statutory construction applicable in the instant case is to liberally construe the Unemployment Insurance Act to provide coverage and strictly construe against exemption. Similarly, we do not find Concordia's reference to a 1951 decision by a referee from the Illinois Department of Labor which held that Concordia qualified for an exemption under the Unemployment Insurance Act controlling.

Based on the foregoing, we conclude that the Department's decision that Concordia is not operated primarily for religious purposes is not against the manifest weight of the evidence. Accordingly, Concordia is not exempt from participation in the unemployment insurance program.

Affirmed.

JOHNSON and LINN, JJ., concur.