Jay TERWILLIGER, Director of the Department of Labor of the State of Arkansas *v.* ST. VINCENT INFIRMARY MEDICAL CENTER

90-290                                        804 S.W.2d 696

Supreme Court of Arkansas
Opinion delivered February 25, 1991.

*Bruce H. Bokony*, for petitioner/appellee.

*Jack Lyon and Jones*, by: *Philip K. Lyon* and *Gary D. Jiles*, for respondent/appellant.

DAVID NEWBERN, Justice. Arkansas employers pay an unemployment tax under the Employment Security Law. Exempted from the requirement is employment in the service of a "church or convention or association of churches" or an "organization operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches." Ark. Code Ann. § 10-11-210(a)(4)(A)(i) and (ii) (Supp. 1989). St. Vincent Infirmary Medical Center (SVI) paid the tax after being determined liable for it in 1972 without contest. In 1988 SVI sought exemption. The Arkansas Board of Review determined SVI was not "operated primarily for religious purposes" and denied the exemption. The Arkansas Court of Appeals reversed, reaching the contrary conclusion. We reverse the Court of Appeals decision, reinstating that of the Board, because we conclude the Board's interpretation of the statute was correct.

The record compiled by the Board consisted of testimony about the nature of the SVI operation. Testimony of Sister Margaret Vincent Blandford established the connection between the infirmary and the Roman Catholic Church; testimony of Don Oglesby presented records to show that the infirmary had been granted an Internal Revenue Service ERISA exemption; testimony of Jack Reynolds established the limitations placed on SVI by the Roman Catholic Church; and testimony of Don Nixon established SVI's attempts to obtain an exemption.

Sister Blandford testified extensively. She stated that SVI is

a "wing" of the Roman Catholic Church and she asserted that the hospital is a conduit for the mission of service to the sick by the Sisters of Charity of Nazareth, a Kentucky charitable corporation. SVI is a separate charitable corporation, subsidiary to the Sisters of Charity of Nazareth. SVI is incorporated in Arkansas, and has run the Infirmary and Medical Center since 1888. The mission of the Sisters is dictated by the Roman Catholic Church, and they are controlled by the Church. They, in turn, manage the hospital. Sister Blandford also established that the Church restricts the type of services they can deliver and does not permit abortion, sterilization, contraception, or euthanasia. She also testified that SVI could operate as a hospital without the Church, although it would not have existed but for the religious mission. Her testimony was clear that, whatever the motivation of the Sisters, SVI functioned as any other hospital in the area except in those areas prohibited by the Roman Catholic Church.

Mr. Reynolds testified that the basic mission of SVI is care for the ill and injured in a Christian environment. He also stated that while the purpose was secular in that SVI was not trying to educate people in the Catholic faith but deal with any and all health related problems, the motivation was religious. He also said very clearly that the religious motivation did not in any way negate the fact that SVI is viewed for licensure and other such purposes as a health care facility, not a religious institution, and absence of the religious motivation would in no way change its status as a hospital.

Mr. Oglesby testified that there was no real difference between SVI and other hospitals and there was no religious affiliation requirement connected with the hiring of 98% of the 2600 employees. He also said the hospital, though exempt from some provisions of ERISA, is still required to follow some of the provisions of that Act. Also, SVI is described as a general hospital in tax documents.

The United States Government imposes a tax on certain classes of employers. 26 U.S.C.S. §§ 3301-3311. State unemployment insurance tax programs have been created because the federal law gives employers a credit against the tax for contributions made to federally approved state unemployment insurance tax programs. The history of this relationship is explained in

*Community Renewal Soc. v. Dept. of Labor*, 439 N.E.2d 975 (Ill. App. 1982). Because of the relationship to the Internal Revenue Code, arguments are often made on the basis of interpretations of the basic federal law and other federal acts.

SVI argued that the IRS exemption as a "church plan" for ERISA purposes was evidence requiring exemption from the employment security requirements because of the similarity in the language of the controlling statutes. The ERISA exemption provides that a plan will qualify as a "church plan" if it is maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the *administration or funding of a plan or program for the provision of retirement or welfare benefits*, or both for the employees of a church or convention or association of churches, if such an organization is controlled or associated with a church or convention or association of churches. 26 U.S.C.A. § 414 (e)(3)(A). "Associated" with a church simply means sharing common religious bonds and convictions with that church. 26 U.S.C.A. 414 (e)(3)(D). All § 414 (e)(3)(A) requires for an exemption is that the organization in question have as its principal *purpose* the administration of a qualified plan and also be associated with a church. The language is substantially different from that with which we are dealing here.

The proper focus of inquiry to determine the primary purpose of operation of SVI was stated in *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 781 (1981), quoting legislative history of the federal statute on which the law we interpret today was based:

> Thus, the services of the janitor of a church would be excluded, but services of the janitor for a separately incorporated college, although it may be church related, would be covered. A college devoted primarily to preparing students for the ministry would be exempt, as would a novitiate or a house of study training candidates to become members of religious orders. On the other hand, a church related (separately incorporated) charitable organization (such as, for example, an orphanage or a home for the aged) would not be considered under this paragraph to be operated primarily for religious purposes. H.R. Rep. No.

91-612, p. 44 (1969).

In the process of construing the meaning of the primary purpose limitation with organizational entities incorporated separately but religiously motivated the Supreme Court has provided some guidance. With reference to separate parochial schools the Court in *Lemon* v. *Kurtzman*, 403 U.S. 602 (1971), noted that church related primary and secondary schools have a "significant religious mission and that a substantial portion of their activities is religiously oriented." *Id.* at 616. In *Meek* v. *Pittenger*, 421 U.S. 349, 365-366 (1975), the Court wrote:

> [I]t would simply ignore reality to attempt to separate secular educational functions from the predominantly religious role performed by many . . . church-related . . . schools . . . .
>
> [R]eligion is so pervasive that a substantial portion of its functions are subsumed in the religious mission. *Id.* at 365-66.

In recognition of the religious orientation of even separately incorporated entities courts have routinely exempted religious schools. *See Nampa Christian Schools Foundation, Inc.* v. *State*, 719 P. 2d 1178 (Idaho 1986); *Community Lutheran School* v. *Iowa Department of Job Service*, 326 N.W. 2d 266 (Iowa 1982). A test enunciated in the *Nampa Christian Schools* case is as follows:

> The Commission made the finding of fact that "*Nampa Christian could not exist as a private school without the moral support of those several churches* [citation omitted, emphasis added in original]." Substantial and competent evidence supports this finding. We therefore may not set aside this finding of fact. [citations omitted] We hold that this type of support constitutes 'principal' support—if the school 'could not exist' without the churches' support, it is dependent upon that support. Such dependency constitutes 'principal' support for purposes of I.C. § 72-1316A(g)(l)(ii).
>
> Our holding today is not broad. It does not mean that mere moral support offered by a church or group of churches to an organization operated for religious purposes will qualify that organization for tax exemption

status under Idaho's Employment Security Act. Rather, our decision states that before tax exemption status can be granted, the Commission must find as fact that such support is necessary for the religious organization's continued operation.

■ Where the religion pervades the operation of the institution, exemption of the operation as one operated primarily for a religious purpose may be had. The evidence here did not establish that. The testimony made it clear that religion is involved in less than 1% of the budget of the infirmary, no proselytizing takes place, and no religious requirements are involved in hiring and staffing decisions except with reference to 18 employees associated with the chapel.

The Court of Appeals relied upon *Kendall* v. *Dir. of Div. of Emp. Sec.*, 473 N.E. 2d 196 (Mass. 1985), where the Supreme Judicial Court of Massachusetts determined that a separately incorporated mental health clinic owned and operated by a religious order for the purpose of providing education and training for mentally retarded children was exempt. The Massachusetts Board had found the institution exempt and the Court was asked to reject the Board's definition of "primarily operated for a religious purpose." The Court wrote:

> At oral argument the claimant conceded that the Center's operations are religiously motivated but argued that this motivation is distinct from the Center's secular purpose, the education of the mentally retarded. We do not see a clear distinction between such motive and purpose. The fact that the religious motives of the Sisters of St. Francis of Assisi also serve the public good by providing for the education and training of the mentally retarded is hardly reason to deny the Center a religious exemption.

We disagree with the approach taken in the *Kendall* case. The Idaho Supreme Court in the *Nampa Christian Schools* case was able clearly to distinguish between religious *motivation* for the performance of a service and *operation* "primarily for religious purposes." *See also St. Augustine's Center for American Indians, Inc.*, 449 N.E.2d 246 (Ill. App. 1983). We too are able to make that distinction.

■ The evidence in this case makes it clear that SVI is *operated* primarily for the purpose of providing health care although the sole *motivation* may be religious in nature. The Board of Review reached the following conclusions:

> [T]he primary function of SVI is the commercial delivery of health care services as a hospital facility and medical institution and that the religious aspects are secondary. . . . Although SVI was founded by a religious order of the Roman Catholic Church, was first brought into existence through a religious motivation and for a specific religious purpose and mission, and remains under the control of the Church up to the present day, the essential function of the institution remains that of a hospital, infirmary and medical institution.

The record amply supports those factual conclusions. Given our interpretation of the statute in a manner separating motivation from purpose of operation, we hold the "operated primarily for religious purposes" exemption does not apply.

Reversed and remanded to the Arkansas Board of Review.