Tina L. PRINCE–WALKER, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Samaritan Institute, Respondents.

No. 92CA1447.

Colorado Court of Appeals, Div. I.

Oct. 21, 1993.

Rehearing Denied Nov. 18, 1993.

Certiorari Granted April 11, 1994.

Waltz, D'Antuono, Correll, Anderson, Tim Correll, Denver, for petitioner.

No appearance for respondent Industrial Claim Appeals Office.

Daniel J. Collyar, Denver, for respondent Samaritan Institute.

Opinion by Judge PIERCE.

In this proceeding for unemployment compensation benefits, Tina L. Prince–Walker (claimant) seeks review of the final order of the Industrial Claim Appeals Panel (Panel) which determined that her wages from Samaritan Institute (Institute) were exempt from inclusion in the determination of her benefits. We set aside the Panel's order and remand with directions.

After being separated from her employment with the Samaritan Institute, claimant applied for unemployment benefits. One of the issues for determination was whether during her tenure with the Institute, claimant had been paid wages for "employment" as defined in the Colorado Employment Security Act (Act), § 8–70–101, et seq., C.R.S. (1986 Repl.Vol. 3B). If so, her wages would necessarily be included in the calculation of

any benefits to which she may be entitled. *See* § 8–73–102, C.R.S. (1986 Repl.Vol. 3B) (subject to other conditions, benefits determined as a percent of "wages paid for insured work"); § 8–70–103(16), C.R.S. (1993 Cum.Supp.) ("Insured work means employment for employers").

Section 8–70–140(1), C.R.S. (1993 Cum. Supp.) provides, in part, that:

> For the purposes of [this Act], 'employment' does not include services performed: (a) In the employ of a church, convention, or association of churches or in employ of an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches. . . .

After a hearing, a Division of Employment and Training referee made certain evidentiary findings and concluded that the Institute was not operated primarily for a religious purpose. Therefore, the referee concluded that pursuant to § 8–70–140(1)(a), C.R.S. (1993 Cum.Supp.), claimant's wages from her employment at the Institute were not to be excluded for purposes of calculating her available benefits.

The Panel reversed, concluding that the criteria set forth in § 8–70–140(1)(a) were met and ordered that the amount of benefits due claimant was to be determined without including her wages from the Institute in that calculation.

Claimant contends the Panel erred in concluding that her wages from the Institute were not to be included in the calculation of her benefits. We agree.

■ When reviewing a referee's decision, the Panel's authority is limited. Pursuant to § 8–74–104, C.R.S. (1986 Repl.Vol. 3B), the Panel may affirm, modify, reverse, or set aside a hearing officer's decision based on the evidence in the record. The Panel's authority is similar to an appellate court's authority and is governed by the Administrative Procedure Act, § 24–4–105, C.R.S. (1988 Repl.Vol. 10A). *Federico v. Brannan Sand & Gravel Co.,* 788 P.2d 1268 (Colo.1990).

■ Section 24–4–105(15)(b), C.R.S. (1988 Repl.Vol. 10A) provides, in part:

> The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or hearing officer shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of evidence.

*See also Clark v. Colorado State University,* 762 P.2d 698 (Colo.App.1988). If the Panel determines that an ultimate conclusion of fact is not supported by the evidentiary findings, it may reach its own such conclusion based on the evidentiary findings. *Federico v. Brannan Sand & Gravel Co., supra.*

■ Evidentiary facts are detailed factual or historical findings upon which a legal determination rests; an ultimate fact involves a question of law or a mixed question of law and fact that settles the rights and liabilities of the parties. *Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982).

■ We hold here that the Panel exceeded its authority by substituting its own evidentiary findings for those of the referee which are amply supported by the record. We also hold that the Panel's ultimate findings and conclusion are not supported by the factual findings made by the referee. Hence, we set aside the Panel's order.

The referee made the following findings of fact:

> The Samaritan Institute is a 501(e)(3) organization which is the national administrative office for the Samaritan Centers located across the United States. The centers are independently incorporated and are connected to the Institute by a contractual agreement of affiliation. For an affiliation fee the centers receive from the Institute accreditation, consultation, and administrative resources. The centers provide counseling service and may or may not be located on the property of a church building. The centers generate most of their funds from the income collected from clients or insurance payments collected for counseling services. The remainder comes from fund raising and donations from corporations and foundations. Although the

counseling is provided within a religious context, a religious affiliation or interest is not a requirement to the counseling which is provided.

The Samaritan Institute is an outgrowth of the Samaritan ministry which began in 1972 in Indiana, which began as a counseling center located in a church. However, since its incorporation in Colorado in December, 1978, the Institute does no counseling. Funding for the Institute is primarily generated from fees charged to its centers for affiliation. The institute also receives funds from individuals and corporations through find-raising activities.

The major services provided by the Samaritan Institute to the various Samaritan Centers are to provide administrative resources, accreditation, and new center development. The major objectives of the Institute is [sic] to ensure quality service, cost effectiveness, organizational help, and local and national accountability. The Samaritan Institute is affiliated with a large number of religious organizations.

Because these findings are supported by the weight of the evidence, the Panel and we must use them to determine the ultimate fact whether the Institute "operate[s] primarily for religious purposes and is operated, supervised, controlled, or principally supported by a church or convention or association of churches." Section 8–70–140, C.R.S. (1993 Cum.Supp.) This portion of the statute has not been specifically interpreted in Colorado.

 The appropriate construction of a statute is a question of law. *People v. Terry,* 791 P.2d 374 (Colo.1990). The court must construe the statute to determine the intent of the General Assembly. *Kern v. Gebhardt,* 746 P.2d 1340 (Colo.1987). If the statute is unambiguous, it is improper to go beyond the accepted meaning of the words in the act. *City & County of Denver v. Howard,* 622 P.2d 568 (Colo.1981).

 Initially, claimant argues that § 8–70–140(1)(a) should be narrowly construed against the Institute because it is a tax exemption statute. However, unlike most tax exemptions, tax exemptions for religious organizations are construed more broadly so as to accommodate First Amendment concerns. *See Maurer v. Young Life,* 779 P.2d 1317 (Colo.1989). Therefore, we do not construe the exemption at issue here as narrowly as we would interpret traditional tax exemption statutes.

Section 8–70–140(1)(a) is identical to the federal provision found in 26 U.S.C. § 3309(b) (1988). Other states have also adopted statutes containing the same language. Thus, guidance from the other jurisdictions is useful in construing our statute.

Regarding the phrase, "in the employ of an organization which is operated primarily for religious purposes," the two portions of this phrase that other jurisdictions have emphasized are the word "primarily" and the phrase "for religious purposes."

In the context of similar statutes, "primarily" has been construed to mean "of first importance," "essentially," or "fundamentally" as opposed to "secondarily" or "merely incidental." *See Department of Employment v. Champion Bake–N–Serve, Inc.,* 100 Idaho 53, 592 P.2d 1370 (1979); *see also Malat v. Riddell,* 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966).

In determining whether the "operated ... for religious purposes" criterion is met, courts have used several different tests. For example, instead of looking just at the "religious purposes" of the organization in question, some courts have looked at the "religious motivations" of the founding organization and the organization in question. *See Kendall v. Director of Division of Employment Security,* 393 Mass. 731, 473 N.E.2d 196 (1985).

The Arkansas supreme court, in *Terwilliger v. St. Vincent Infirmary Medical Center,* 304 Ark. 626, 804 S.W.2d 696 (1991), found that the religious motivation of the sisters in their operation of a hospital was separate from any religious purpose of the hospital. It focused on the operations of the hospital and determined that if the religion pervades the operation of an institution, the exemption may be applied. The court concluded, however, that although the motivation of the sisters in operating the hospital was religious in nature, that facility was operated primari-

ly for the purpose of providing health care. The court concluded that, given its interpretation of the statute separating motivation from purpose of the operation, the exemption did not apply to the hospital.

■■■ We are persuaded by that reading and rule that the word "purposes" should be interpreted to mean only "purposes" and not to include "motivations." *See St. Augustine's Center for American Indians, Inc. v. Department of Labor*, 114 Ill.App.3d 621, 70 Ill.Dec. 372, 449 N.E.2d 246 (1983).

This interpretation also comports with federal interpretations. The Supreme Court quoted from the legislative history of the federal statute as follows:

This paragraph excludes services of persons where the employer is a church or convention or association of churches, but does not exclude certain services performed for an organization which may be *religious in orientation unless it is operated primarily for religious purposes* and is operated, supervised, controlled, or principally supported by a church.... Thus, the services of a janitor of a church would be excluded, but services of a janitor for a separately incorporated college, although it may be church related, would be covered. A college devoted primarily to preparing students for the ministry would be exempt, as would a novitiate or a house of study training candidates to become members of religious orders. On the other hand, a church related (separately incorporated) charitable organization (such as, for example, an orphanage or a home for the aged) would not be considered under this paragraph to be operated primarily for religious purposes.

*St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 781, 101 S.Ct. 2142, 2147–2148, 68 L.Ed.2d 612, 620 (1981). (emphasis supplied)

■■■ In light of these rulings from other jurisdictions, we hold that the General Assembly intended the statute to be applied only if the "religious influence" is pervasive throughout the organization which is applying for the exemption, not the organization which founded the institution applying for the exemption. *See St. Augustine's Center for American Indians, Inc. v. Department of Labor, supra.* This construction also comports with the public policy that:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life.

Section 8–70–102, C.R.S. (1986 Repl.Vol. 3B). Therefore, the exemption is not to be lightly granted.

■■■ Here, the referee found that: (1) the Institute was originally founded as the Samaritan Ministry, which had religious "motivations" to provide counseling with an interfaith religious orientation; (2) later it incorporated and became the Samaritan Institute, which essentially became an administrative organization that provides support for various Samaritan Centers, which actually provide counseling services; (3) the Institute provides no counseling services; (4) although the Institute's Board of Directors is composed of members of churches which support mainly the cause of the Centers, the Institute itself operates independently as a corporation; (5) in this regard, the Presbytery of the Presbyterian Church has voted to acknowledge the purposes of the Institute, although it provides little supervision over its operations; (6) funding for the Institute is generated by the Institute itself which enters into affiliation agreements with the Centers; (7) the agreements have mutual rights and responsibilities incorporated into them; and (8) the Institute's main source of funding is the annual fee it receives from each affiliated Center.

In light of these evidentiary findings, we hold that the Institute's primary purpose is not religious in nature, although it may have religious motivations. Therefore, we hold that the Panel erred as a matter of law in finding that the claimant's wages from the Institute were exempt from inclusion in the calculation of her benefits.

Hence, the order of the Panel is set aside, and the cause is remanded with directions to reinstate the referee's order.

CRISWELL and ROTHENBERG, JJ., concur.