**SAMARITAN INSTITUTE, Petitioner,**

v.

**Tina L. PRINCE–WALKER, Respondent.**

**No. 93SC705.**

Supreme Court of Colorado,
En Banc.

Oct. 11, 1994.

Coan & Collyar, Daniel J. Collyar, Denver, for petitioner.

Waltz, D'Antuono, Correll & Anderson, Tim Correll, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *Prince–Walker v. Industrial Claim App. Office*, 870 P.2d 588 (Colo.App.1993), and to resolve two questions:

1. Whether the court of appeals properly interpreted the phrase "operated primarily for religious purposes," in section 8–70–140(1)(a), 3B C.R.S. (1993 Supp.)....

2. Whether the court of appeals erred in holding that the Industrial Claim Appeals Panel (Panel) exceeded its authority by improperly substituting its evidentiary findings for those of the referee.

Our answer to the first question is yes. Our answer to the second question is no. Accord-

<br>

ingly, we affirm the judgment entered by the court of appeals.

## I

Tina Prince–Walker (Walker) was employed by the Samaritan Institute (Institute) from September 1989 to May 1991, when she was discharged. She worked for the Institute in several different job classifications and last worked as a part-time executive assistant. She filed a claim for unemployment compensation benefits with the Colorado Division of Employment and Training (Division) after she was discharged.

During her tenure with the Institute, Walker was paid wages for "employment" as defined in the Colorado Employment Security Act (Act), §§ 8–70–101 to –106, 3B C.R.S. (1986). Wages paid to an employee generally provide the basis for determining the benefits to be paid. § 8–73–102, 3B C.R.S. (1986) (subject to other conditions, benefits are determined as a percentage of "wages paid for insured work"); § 8–70–103(16), 8B C.R.S. (1993 Supp.) (" 'Insured work' means employment for employers.").

The Division found that, pursuant to section 8–70–140(1)(a), 3B C.R.S. (1993 Supp.), Walker was not "employed" by the Institute, because the organization was "operated primarily for religious purposes." Section 8–70–140(1)(a) provides:

8–70–140. **Employment does not include—nonprofit organizations.** (1) For the purposes of sections 8–70–118 and 8–70–119, "employment" does not include services performed:

(a) In the employ of a church, convention, or association of churches or in the employ of an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches; . . . .

Accordingly, the Division denied Walker's claim for employment compensation benefits. Walker appealed, and was granted a hearing before a referee.[1] The referee made the following findings of fact and conclusions that are at issue in this appeal:

The Samaritan Institute is a 501(e)(3) organization which is the national administrative office for the Samaritan Centers located across the United States. The centers are independently incorporated and are connected to the Institute by a contractual agreement of affiliation. For an affiliation fee the centers receive from the Institute accreditation, consultation, and administrative resources. The centers provide counseling services and may or may not be located on the property of a church building. The centers generate most of their funds from the income collected from clients or insurance payments collected for counseling services. The remainder comes from fund raising and donations from corporations and foundations. Although the counseling is provided within a religious context, a religious affiliation or interest is not a requirement to the counseling which is provided.

The Samaritan Institute is an outgrowth of the Samaritan ministry which began in 1972 in Indiana, which began as a counseling center located in a church. However, since its incorporation in Colorado in December, 1978, the Institute does no counseling. Funding for the Institute is primarily generated from fees charged to its centers for affiliation. The institute also receives funding from individuals and corporations through fund-raising activities. The major services provided by the Samaritan Institute to the various Samaritan Centers are to provide administrative resources, accreditation, and new center development. The major objectives of the Institute [are] to ensure quality service, cost effectiveness, organizational help, and

---

1. A referee from the Division of Employment and Training awarded Walker unemployment compensation benefits. On appeal, a Panel of the Industrial Claim Appeals Office reversed the award, finding that Walker's employer "operated primarily for religious purposes," and was exempt from paying unemployment compensation benefits on wages paid to the employee. The

court of appeals held that the Panel had improperly substituted its findings of evidentiary facts for those of the referee, and that the Panel's ultimate findings were not supported by the evidentiary findings made by the referee. The court of appeals also held that the Panel misconstrued the phrase "operated primarily for religious purposes."

local and national accountability. The Samaritan Institute is affiliated with a large number of religious organizations.

The referee concludes that the claimant's wages from this employment are not exempt under Section 8–70–140(a), C.R.S. In arriving at this conclusion the referee finds that the Samaritan Institute is not operated primarily for a religious purpose. The Samaritan Institute is operated as a non-profit corporation which provides accreditation, consultation, and administrative resources for the various Samaritan Centers pursuant to a contractual agreement of affiliation. The services provided by the Samaritan Centers are counseling services for individuals who are undergoing emotional stress and pain.

(Emphasis added.)

The referee held that the exemption was not available to the Institute and that Walker's wages could be used to determine unemployment compensation benefits. The Institute appealed to the Industrial Claim Appeals Office (Panel). The Panel found that the statutory exemption was available to the Institute as an organization operated primarily for religious purposes. Walker appealed to the court of appeals, which reversed the Panel and held:

> When reviewing a referee's decision, the Panel's authority is limited. Pursuant to § 8–74–104 (1986 Repl.Vol. 3B), the Panel may affirm, modify, reverse, or set aside a hearing officer's decision based on the evidence in the record. The Panel's authority is similar to an appellate court's authority and is governed by the Administrative Procedure Act, § 24–4–105, C.R.S. (1988 Repl. Vol. 10A). *Federico v. Brannan Sand & Gravel Co.,* 788 P.2d 1268 (Colo.1990).
>
> Section 24–4–105(15)(b), C.R.S. (1988 Repl.Vol. 10A) provides, in part:
>
> > The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or hearing officer shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of evidence.

*See also Clark v. Colorado State University,* 762 P.2d 698 (Colo.App.1988). If the Panel determines that an ultimate conclusion of fact is not supported by the evidentiary findings, it may reach its own such conclusion based on the evidentiary findings. *Federico v. Brannan Sand & Gravel Co., supra.*

> Evidentiary facts are detailed factual or historical findings upon which a legal determination rests; an ultimate fact involves a question of law or a mixed question of law and fact that settles the rights and liabilities of the parties. *Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982).
>
> We hold here that the Panel exceeded its authority by substituting its own evidentiary findings for those of the referee which are amply supported by the record. We also hold that the Panel's ultimate findings and conclusion are not supported by the factual findings of the referee. Hence, we set aside the Panel's order.

*Prince–Walker v. Industrial Claim Appeals Office,* 870 P.2d 588, 590 (Colo.App.1993).

## II

We agree with the court of appeals that the Institute does not fall within the ambit of protection and the exemption provided by section 8–70–140(1)(a), 3B C.R.S. (1993 Supp.). We also agree with the court of appeals that the Institute is not entitled to the exemption afforded to organizations "operated primarily for religious purposes."

### A

Section 8–70–140(1)(a) contains an exemption for organizations that are "operated primarily for religious purposes." In interpreting a statute, the court must attempt to discern the General Assembly's intent. *Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo.1994); *Kern v. Gebhardt,* 746 P.2d 1340 (Colo.1987). Plain meaning of the statute, if ascertainable, is dispositive. *City & County of Denver v. Howard,* 622 P.2d 568, 569 (Colo.1981). "If the language of the statute is clear and the intent of the General Assembly may be discerned with certainty, it is not necessary to resort to other rules of

statutory interpretation." *Scoggins*, 869 P.2d at 205.

█ Plain interpretation of the meaning of section 8–70–140(1)(a) emphasizes the activities of an organization. The word "operated" connotes activity. Thus, the type of activity actually engaged in, rather than the motivation and impetus for the activity, is dispositive. Standing alone, however, the word "operated" does not offer much assistance. Therefore, the words "primarily" and "for religious purposes" offer guidance in determining the contours of the phrase.

## B

█ We have not previously addressed the scope of section 8–70–140(1)(a). The statute is, however, identical to 26 U.S.C. § 3309(b) (1988), and other state legislatures have adopted similar statutes that have been the subject of judicial review. The activities of an organization, and not the motivation behind those activities, determine whether an exemption is warranted. *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 781, 101 S.Ct. 2142, 2147–48, 68 L.Ed.2d 612 (1981); *Terwilliger v. St. Vincent Infirmary Medical Ctr.*, 304 Ark. 626, 804 S.W.2d 696, 699 (1991); *Concordia Ass'n v. Ward*, 177 Ill.App.3d 438, 126 Ill.Dec. 726, 532 N.E.2d 411, 414 (1 Dist.1988).

Some activities clearly fall within the scope of the statutory exclusion, while others require an ad hoc determination based upon the facts. The United States Supreme Court, in addressing the federal counterpart to section 8–70–140(1)(a), said:

> [T]he services of a janitor of a church would be excluded [i.e., exempted], but services of a janitor for a separately incorporated college, although it may be church related, would be covered. A college devoted primarily to preparing students for the ministry would be exempt, as would a novitiate or a house of study training candidates to become members of religious

orders. On the other hand, a church related (separately incorporated) charitable organization (such as, for example, an orphanage or a home for the aged) would not be considered under this paragraph to be operated primarily for religious purposes.

*St. Martin*, 451 U.S. at 781, 101 S.Ct. at 2148.

In *St. Martin*, a distinction is made between a religious school that performs primarily secular activities and one that performs primarily religious activities.[2] This distinction focuses on the word "operated." The activities of an organization determine whether an exemption is warranted. Other courts have stressed the importance of the word "primarily." *Department of Employment v. Champion Bake–n–Serve, Inc.*, 100 Idaho 53, 592 P.2d 1370, 1372 (1979); *see also Malat v. Riddle*, 383 U.S. 569, 572, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966) (" 'primarily' means 'of first importance' "). As the Arkansas Supreme Court said: "Where the religion pervades the operation of the institution, exemption of the operation as one operated primarily for a religious purpose may be had." *Terwilliger*, 804 S.W.2d at 699.

*Terwilliger* held that a hospital, which was owned and operated by the Catholic church, but performed essentially secular functions, was not exempt from paying benefits under a comparable Arkansas statute. The court stated that an exemption was not warranted where, "religion is involved in less than 1% of the budget of the infirmary, no proselytizing takes place, and no religious requirements are involved in hiring and staffing decisions except with reference to 18 employees associated with the chapel." *Terwilliger*, 804 S.W.2d at 699.

A cemetery operated by a church association was not exempt from paying benefits. *Concordia Ass'n v. Ward*, 177 Ill.App.3d 438, 126 Ill.Dec. 726, 532 N.E.2d 411 (Dist. 1 1988). The court found that "the functions performed by Concordia are no different

---

**2.** In *Lemon v. Kurtzman*, 403 U.S. 602, 613, 91 S.Ct. 2105, 2111–12, 29 L.Ed.2d 745 (1971), the Court recognized that church-related primary and secondary schools have a "significant religious mission and that a substantial portion of their activities is religiously oriented." Religious

schools are commonly granted exemptions. *See, e.g., Nampa Christian Sch. Found., Inc. v. State*, 110 Idaho 918, 719 P.2d 1178 (1986); *Community Lutheran Sch. v. Iowa Dep't of Job Serv.*, 326 N.W.2d 286 (Iowa 1982).

than those performed in a secular cemetery." *Concordia,* 532 N.E.2d at 414. *See also St. Augustine's Center for Am. Indians, Inc. v. Department of Labor,* 114 Ill.App.3d 621, 70 Ill.Dec. 372, 449 N.E.2d 246, 249 (1 Dist.1983) ("the mere fact that an organization is charitable does not necessarily mean that it is religious").

The nature of the activity performed provides assistance in ascertaining whether an organization is "operated primarily for religious purposes." While *Maurer v. Young Life,* 779 P.2d 1317 (Colo.1989), provides that exemptions for religious organizations should be construed more broadly than other statutes, section 8–70–140(1)(a) requires a more circumscribed view. An organization that provides essentially secular services falls outside of the scope of section 8–70–140(1)(a).

## C

■ The Institute's primary activity is to provide administrative services for Centers that provide counseling which, in this case, is not a religious activity subject to exemption under section 8–70–140(1)(a).[3] In fact, the referee found that the Institute did not offer or provide counseling services in Colorado.

The Institute's mission statement is described in its by-laws as providing religious outlets "for people under stress." The Institute perceives itself as "an extension of the ministry of the various churches with which it is affiliated. . . . The goal of the Institute . . . is to strengthen and build upon a person's faith."

Under section 8–70–140(1)(a), it is an organization's activities, and not its motivations or goals, that determine exempt status.[4] The evidence indicates that the services provided

by the Institute are essentially secular. The Institute does not evangelize or proselytize, and new employees are not instructed as to any religious purposes of the organization. The Centers outside of Colorado provide services whether or not a counselee is interested in religion, and a counselee is not required to participate in any religious discussion or activity. Due to the fact the Institute in Colorado does not provide counseling, the pastoral counseling in other states does not support the religious exemption claimed in Colorado.

Because the services offered are essentially secular, the Institute does not "operate primarily for religious purposes." Therefore, we hold that the Institute does not qualify for a section 8–70–140(1)(a) exemption.

## III

■ Section 8–74–104(2), 3B C.R.S. (1986), permits the Panel to affirm, modify, reverse, or set aside a referee's decision based on the evidence in the record. In *Federico v. Brannan Sand & Gravel Co.,* 788 P.2d 1268, 1272 (Colo.1990), we stated that the General Assembly intended that section 24–4–105(15)(b), 10A C.R.S. (Colo.1988), control the Panel's scope of appellate review of a referee's decisions in unemployment compensation cases. *See also Clark v. Colorado State Univ.,* 762 P.2d 698, 700 (Colo.App.1988) (stating that review by an agency is set forth in section 24–4–105(15)(b)). Section 24–4–105(15)(b) of the Administrative Procedure Act (APA) provides:

> The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or the hearing officer shall not be set aside by

---

3. The Institute's function is to provide administrative support for the Centers. If the Centers are not exempt, the Institute is not exempt. Some Centers engage in counseling by pastors or those with religious training. Pastoral counseling, for the reasons set forth in this opinion, is not a religious activity, and so the Centers do not qualify for an exemption. Therefore, the Institute does not qualify for an exemption.

4. The court of appeals held that an exemption can only be granted when religion "pervades" the organization. Use of this word is misleading, because it implies that the motivation of an organi-

nization is determinative. Motivation alone has little probative value. For example, in this case, the petitioner points to its by-laws, which state that "the Institute is an expression of the love of God," as proof that the Institute is operated for a religious purpose. Even if this statement were true, it is, at most, one fact to consider when evaluating whether the organization deserves an exemption. In fact, these by-laws were formally adopted in July 1991, one week prior to Walker's hearing and nearly three months after her termination.

the agency on review of the initial decision unless such findings of evidentiary fact are *contrary to the weight of the evidence.* (Emphasis added); *see also Colorado State Bd. of Nursing v. Lang,* 842 P.2d 1383, 1387 (Colo.App.1992).

Evidentiary facts are the historical facts underlying the controversy. *Federico,* 788 P.2d at 1272; *Lee v. State Bd. of Dental Examiners,* 654 P.2d 839, 843 (Colo.1982); *Womack v. Industrial Comm'n,* 168 Colo. 364, 371, 451 P.2d 761, 764 (1969). Ultimate facts, on the other hand, are "conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine the rights and liabilities of the parties." *Federico,* 788 P.2d at 1272; *see also Lee,* 654 P.2d at 844 ("Findings of ultimate fact, as distinguished from raw evidentiary fact, involve a conclusion of law, or at least a determination of a mixed question of law and fact, and settle the rights and liabilities of the parties."). Ultimate facts are "as a general rule phrased in the language of the controlling statute or legal standard." *Federico,* 788 P.2d at 1272. Accordingly, the Panel can make its own determination as to ultimate facts, and is not bound by the referee's findings, so long as the determination has a reasonable basis in law and is supported by substantial evidence in the record. *Lee,* 654 P.2d at 844; *People ex rel. Woodard v. Brown,* 770 P.2d 1373, 1379 (Colo.App.1989).

The referee found that the Institute is not operated primarily for a religious purpose. The Panel reversed the referee's decision, finding that, "the weight of the evidence establishes that the purpose of the Institute's activities, indeed its very existence, is to aid the establishment and operation of pastoral counseling Centers, which provide counseling services in the context of religious faith." Although Walker presented additional evidence on appeal, the Panel's review was properly restricted to the evidence in the record before the referee. *Voisinet v. Industrial Claim Appeals Office,* 757 P.2d 171, 172 (Colo.App.1988) (stating that the Panel's review is limited to the record made before the hearing officer).

The court of appeals held that the evidentiary facts found by the referee were supported by the weight of the evidence, and thus both the Panel and the court of appeals were bound by those findings in determining the ultimate fact. We agree. The Panel was not at liberty to ignore the findings of evidentiary facts when it determined the ultimate facts.

Underlying the conflict between the referee and the Panel regarding the religious purpose of the Institute was a question of whether the evidence in the record demonstrated that the Institute-certified counseling differed from "generic" counseling available from secular sources. The referee found no significant difference between the counseling provided at the Samaritan Centers and counseling provided elsewhere.[5] Conversely, the Panel found that the Samaritan Centers provided pastoral counseling which was distinct from secular therapy.

Determining whether the counseling available from Samaritan Centers was different from secular therapy was a purely factual question to be determined from the evidence without reference to a legal standard. This finding is thus an evidentiary fact distinct from the question of ultimate fact. Findings of evidentiary fact, such as the referee's findings in this case, "shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are *contrary to the weight of the evidence.*" § 24–4–105(15)(b) (emphasis added).

While the "weight of the evidence" standard has not been interpreted by this court in this context, it is generally considered to be something more than substantial evidence. *See* 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.2, at 177 (3d ed. 1994) (citation omitted).[6] The standard thus requires more

---

5. The referee made a finding that "the counseling is provided within a religious context," but, taken as a whole, the referee found the content of the counseling provided through the centers was not significantly different from "generic" secular counseling. Significantly, the referee also found that the Institute did not offer or provide counseling services in Colorado.

6. Neither the Federal Administrative Procedure Act nor the Model State Administrative Proce-

and better-quality evidence to overturn a determination than does the substantial-evidence standard. Where the determination rests on the credibility of testimony, the findings of a hearing officer are entitled to particular weight upon review. *See* 2 Davis & Pierce, *Administrative Law Treatise* § 11.2 at 178–91; *Sanchez v. State*, 730 P.2d 328, 333 (Colo.1986) (agency officer who heard conflicting testimony "is in the best position to make the credibility assessments").

■ Both the Colorado and Federal APA use the substantial evidence standard for judicial review of agency findings.[7] Unlike the substantial evidence standard, the Colorado APA weight of the evidence standard is phrased in the negative: a hearing officer's determinations of evidentiary fact "*shall not be* ... set aside *unless* [they] are contrary to the weight of the evidence." § 24–4–105(15)(b) (emphasis added). The negative phrasing of this standard establishes a baseline assumption that the hearing officer's findings of evidentiary fact are accurate. In situations in which the evidence could equally support alternative findings, the hearing officer's finding may not be set aside. The standard consequently places the "weight of the evidence" showing on the party challenging the hearing officer's findings, rather than on the party seeking to uphold those findings. Accordingly, although this standard gives the agency's reviewing body discretion to weigh the evidence independently, it forbids the reviewing body from

substituting its determination for that of the hearing officer. *Federico*, 788 P.2d at 1273 (holding that the court of appeals correctly set aside the Panel's findings because the Panel "instead of weighing the evidence pursuant to section 24–4–105(15)(b), substituted its own finding that the claimants had been permanently replaced").

■ The Colorado APA's "weight of the evidence" standard is more deferential than the substantial-evidence standard, and ultimately requires the agency to discover a clear error in the hearing officer's determinations to set them aside. A review of the record supports the referee's finding that the counseling provided at the Samaritan Centers did not differ significantly from counseling provided at secular facilities. Thus, the referee's determination was not "contrary to the weight of the evidence" and should not have been set aside by the Panel.

The Panel's independent ruling concerning the religious content of the Institute's counseling activities is a finding of evidentiary fact. In determining ultimate facts, the Panel was bound by the evidentiary facts found by the referee because they were supported by the weight of the evidence. Therefore the court of appeals was correct when it held that the Panel exceeded its authority in substituting its finding of evidentiary facts for those of the referee.

dure Act use the "weight of the evidence" standard for agency review of hearing officer findings. Both provide for what is essentially a *de novo* review of the hearing officer's determinations:

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule.

5 U.S.C. § 557(b) (1988).

The presiding officer for the review of an initial order shall exercise all the decision-making power that the presiding officer would have had to render a final order had the presiding officer presided over the hearing, except to the extent that the issues subject to review are limited by a provision of law or by the presiding officer upon notice to all parties.

Model State Administrative Procedure Act, 1981 Act (U.L.A.) § 4–216(d). Accordingly, case law

interpreting these review provisions is not helpful in interpreting the Colorado provision.

7. Under the Federal APA, "[t]he reviewing court shall— ...; (2) hold unlawful and set aside agency action, findings, and conclusions found to be— ... (E) unsupported by *substantial evidence*...." 5 U.S.C. § 706(2)(E) (1988) (emphasis added).

Similarly, under the Colorado APA, "[i]f [the court] finds that the agency action is ... unsupported by *substantial evidence* ... then the court shall hold unlawful and set aside the agency action...." § 24–4–106(7), 10A C.R.S. (1988).

The substantial-evidence standard defers to agency determinations but "precludes affirmance of an agency finding in the extreme case where the evidence that detracts from the finding is dramatically disproportionate to the evidence that supports the finding." 2 Davis & Pierce, *Administrative Law Treatise* § 11.2, at 176.

Accordingly, the judgment of the court of appeals is affirmed.