719 P.2d 1178

**NAMPA CHRISTIAN SCHOOLS FOUNDATION, INC., Employer Account No. 700330–7, Employer-Respondent,**

v.

**STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Appellant,**

Re Lois R. ANDERSON.

No. 15833.

Supreme Court of Idaho.

May 19, 1986.

Jim Jones, Atty. Gen., Roger Thomas Martindale, Deputy Atty. Gen. (argued), Boise, for the State.

David E. Kerrick, of Alexander, Davis, Rainey, Whitney & Kerrick, Caldwell, William Bentley Ball (argued), Philip J. Murren, and Sandra E. Wise, of Ball and Skelly, Harrisburg, Pa., for employer-respondent.

BISTLINE, Justice.

Nampa Christian Schools, Inc., was organized by a group of parents interested in providing a "Christian" education for high school students. In addition to the superintendent, the school employs 22 teachers and eight other staff members, including

office help, bus drivers, and support personnel.

Control of the school is entirely in the hands of a board of trustees, elected by corporation members. The churches whose members attend as students at the school do not direct the school's operations. There is no group of churches banded together to control or supervise the school. In short, the school is nondenominational. Furthermore, parents of children attending the school must agree to stay nondenominational and not to inject any doctrinal controversy into the school.

In order to be a member of the corporation, an individual must either have a child attending the school or be a former student. Corporation members also must be members in good standing of a local church or of a fellowship that does not recognize membership. In addition, the individual must believe in Jesus Christ, have a personal relationship with Him, and agree to the school's Statement of Faith.[1]

Teachers also are required to have beliefs consistent with the school's Statement of Faith. Nampa Christian expects its teachers to be heavily involved in their local churches inasmuch as the school believes it is assisting local churches with the responsibility of educating students to serve God. Teachers are also expected to integrate the Statement of Faith into their teaching and to agree to live and teach in harmony with "fundamental Christianity." They are expected to view their employment "as a work of faith," Ex. No. 25, and attend regular faculty prayer meetings. If a teacher is using a secular text, he or she is required to integrate the school's religious position into the instruction. The teacher is evaluated on his or her ability to create a "Christian" atmosphere in the class.

Religious ideological practices permeate Nampa Christian's affairs. The school's articles of incorporation state the purposes of the school as follows: (1) to instruct in all subjects "on the basis of the Biblical philosophy of creation, history and destination"; (2) "to teach the Bible, Biblical and historical theology, the science of Christian education, the history and methods of missions, and other related subjects"; (3) "to educate persons through [its] schools and, as the opportunity may arise, through additional course work, Bible Institute and Seminary training as may be appropriate." Ex. No. 19, p. 1.

Students who attend Nampa Christian agree to "revere God and His established authority." Ex. No. 29, p. 6. Students are also told that "Christian conduct" is expected of them. *Id.* Most students in grades 7–12 sign the school's Statement of Faith. Ex. No. 30, p. 14.

No subject taught at Nampa Christian is regarded as "secular." Ex. No. 23, pp. 1–2. Students attend chapel services weekly, and Bible study is required of all junior high and high school students. In short, as the Industrial Commission noted, "[r]eligion pervades every aspect of the educational program of Nampa Christian Schools, Inc." R., Vol. 2, p. 13. The Commission also stated that, although Nampa Christian's Statement of Faith is unique, it "is consistent with the beliefs of a number of churches in the Treasure Valley area, and *Nampa Christian could not exist as a private school without the moral support of those several churches.*" R., Vol. 2, p. 14 (emphasis added).

Eighty-five percent of the school's financial support comes from tuition paid by students, and 15 percent comes from donations and other sources. Only a small amount of financial support comes from individual churches. In fact, less than one percent of the financial support comes from the churches themselves.

---

1. The Statement of Faith consists of thirteen statements of belief (1) in the Holy Scriptures, (2) in the one triune God, (3) in the Lord Jesus Christ, (4) in the Holy Spirit, (5) in the creation and fall of man, (6) in salvation by grace through faith, (7) in righteous living and good work, (8) in the existence of Satan, (9) in the second coming of Christ, (10) in future life, bodily resurrection and eternal judgment, (11) in one true Church, (12) in separation from the world, and (13) in educating young people according to the foregoing principles and teaching in a non-denominational manner.

The claimant, Lois R. Anderson, worked at Nampa Christian from August 1, 1979 to the end of July, 1982, when she was dismissed. Her duties included those of a secretary, registrar, receptionist, and general office worker. After being laid off, Mrs. Anderson filed for unemployment benefits, which the Department of Employment denied. Mrs. Anderson appealed within the Department, and on November 20, 1982, an appeals examiner affirmed the Department. Mrs. Anderson then appealed to the Industrial Commission, which remanded the case to the appeals examiner for further findings.

On December 7, 1983, the appeals examiner reversed himself, now holding that Mrs. Anderson was entitled to unemployment benefits. Nampa Christian appealed to the Industrial Commission, which reversed the appeals examiner. The Commission reached its conclusion by holding that I.C. § 72–1316A(g)(1) [2]—which deals with exemptions from coverage under Idaho's employment security law—violates the Establishment Clause of the First Amendment to the United States Constitution.[3] The Department appeals to this Court. While both parties argued extensively concerning the constitutional issues arising in this case, we hold that Nampa Christian is statutorily exempted from coverage. We therefore do not address the constitutional issues raised by both parties.[4]

## I. LEGAL BACKGROUND

### A. *Rules of Construction.*

We begin by noting two axiomatic rules of constitutional construction. First, "ap-

pellate courts are obligated to seek an interpretation of the statute which upholds its constitutionality." *State v. Newman,* 108 Idaho 5, 13 n. 12, 696 P.2d 856, 863 n. 12 (1985). Second, appellate courts will not rule upon constitutional issues where the case can be disposed of on other grounds. *State v. Hightower,* 101 Idaho 749, 757, 620 P.2d 783, 791 (1980); *see also Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. This rule has found most varied application. Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

### B. *The Statutory Language in Issue.*

In accordance with the above rule of construction, our first inquiry is into whether the statute can be interpreted in a reasonable way that does not render it potentially unconstitutional. As we noted in footnote 2 above, I.C. § 72–1316A defines the term "exempt employment." Services that constitute "exempt employment" are not covered by Idaho's employment security law. I.C. §§ 72–1366 and –1367.

The particular part of § 72–1316A that the Industrial Commission held unconstitutional—§ 72–1316A(g)(1)—exempts servic-

---

**2.** I.C. § 72–1316A defines the term "exempt employment" for purposes of employment coverage. Section 77–1316A(g)(1)—the subject of this suit—exempts from coverage service performed: (1) In the employ of (i) a church or convention or association of churches, or (ii) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church, or convention or association of churches....

**3.** The Commission did not address the issue of whether I.C. § 72–1316A(g)(1) violates art. 1,

§ 4 of the Idaho Constitution, which is Idaho's constitutional guarantee of religious liberty. Preferably, when addressing constitutional issues, our state constitutional provisions should be reviewed first before turning to the federal constitution. *Accord Salem College & Academy, Inc. v. Employment Division,* 695 P.2d 25, 34 (Or.1985).

**4.** We also, therefore, do not address the issue of whether the Industrial Commission had jurisdiction to declare I.C. § 72–1316A(g)(1) unconstitutional.

es performed in the employ of either a church or group of churches, or an organization operated primarily for religious purposes and which is operated or principally supported by a church or group of churches. For the reasons that follow, we hold that (A) while Nampa Christian is not a "church" for purposes of I.C. § 72–1316A(g)(1)(i), (B) it is operated primarily for religious purposes and is principally supported by an association of churches as I.C. § 72–1316A(g)(1)(ii) requires.

## II. ANALYSIS

A. *Nampa Christian is Not a "Church" for Purposes of I.C. § 72–1316A(g)(1)(i).*

Nowhere in the Idaho Code or in case law has the term "church" ever been authoritatively defined. The closest this Court came to defining the term was in *State v. Idaho Allied Christian Forces,* 105 Idaho 312, 669 P.2d 201 (1983).

In *Allied,* this Court was faced with the issue of "whether the churches connected with [Allied] constitute 'an association of churches' which operates, supervises, controls or principally supports [Allied] as contemplated by I.C. § 72–1316A(g)(1)(ii)." *Id.* at 314, 669 P.2d at 203. The defendant—Allied Christian Forces—argued that "association of churches" should be interpreted broadly to include " 'a cooperative undertaking by churches of differing denominations....' " *Id., quoting* Rev.Rul. 74–224, 1974–1, C.B.61. The plaintiff—the State of Idaho—argued for a more restrictive definition. The state urged this Court to interpret "association of churches" as meaning a group of "established, institutionalized religious denominations and their constituent congregations." *Id.*

This Court declined to define the term, stating that even were it to adopt the defendants' definition, the defendants would still not prevail. The Court based its holding on the fact that there was no evidence in the record which showed that an association of churches was supervising, operating, controlling, or principally supporting Allied Christian Forces. *Id.,* at 314–15, 669 P.2d at 203–04. Thus, not only did the Court refuse to define "association of churches," it also did not define the term "church" either.

The United States Supreme Court, in *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981), confronted the question of whether a church-run school qualified as a "church" for the purposes of a South Dakota statute—S.D. Codified Laws § 61–1–10.4—that is identical to the statute before us.[5] The Court held that the word "church" refers "to the congregation or the hierarchy itself, that is, the church authorities who conduct the business of hiring, discharging, and directing church employees." *Id.,* 451 U.S. at 784, 101 S.Ct. at 2149. The Court went on further to state that "the word 'church' in 26 U.S.C. § 3309(b) [the federal counterpart to I.C. § 72–1316A(g)] must be considered as the 'employer,' and not as a building that is a house of worship...." *Id.* at 784 n. 15, 101 S.Ct. at 2149 n. 15. Accordingly, the Court held that a parochial school run by St. Martin Evangelical Lutheran Church—and possessing no separate legal identity from the church—was a "church" for purposes of 26 U.S.C. § 3309(b). *Id.* at 784–85, 101 S.Ct. at 2149–50.

The Court made clear that it was only deciding the meaning of the word "church" as it relates to those "schools that have *no* legal identity separate from a church." *Id.* at 782 n. 12, 101 S.Ct. at 2148 n. 12 (emphasis added). The Court addressed, however, a second category of religiously oriented schools—those which are *separately incorporated* by a church. The Court stated that such church schools "must satisfy the requirements of § 3309(b)(1)(B): (1) that the organization 'is operated primarily for religious purposes' and (2) that it is 'operat-

---

**5.** The South Dakota and Idaho statutes are taken from the Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301–3311 (1976 ed. &

Supp. III). The particular section of the statute we are interpreting today is taken from 26 U.S.C. § 3309(b).

ed, supervised, controlled, or principally supported by a church or convention or association of churches.'" *Id.* Thus, a *separately incorporated church* school cannot be considered a "church" in its own right for purposes of § 3309(b)(1)(A) of FUTA. No reason, however, was given for this conclusion.

The Court's comment in footnote 12 is directed at a school *incorporated as a separate entity by a founding church.* It is clear that the Court's comment did not include a *religious* school *incorporated independently from any recognized, incorporated church.* This is a third category of religiously oriented schools apart from the two described above, and is the category into which Nampa Christian falls.

The mere fact that a category-two school—a legally separate *church* school established by a legally incorporated church—cannot be held as being a "church" for purposes of FUTA, does not mean that a category-three school—a *religiously* oriented school incorporated by individuals independent of any "church" involvement—cannot be considered a "church" in its own right. Thus, it is still incumbent for us to determine whether Nampa Christian, being incorporated independent of any church, and therefore a category-three school, is a "church" itself for purposes of I.C. § 72–1316A(g)(1)(i).

In *Lutheran Social Service of Minnesota v. United States,* 758 F.2d 1283, 1286–87 (8th Cir.1985), the Eighth Circuit discussed factors to be considered in defining the term "church" for purposes of 26 U.S.C. § 6033—a statute which deals with information that must be filed by tax exempt organizations. We find the definition employed there to be applicable here.

 The court employed a functional approach, stating that what is and is not a church will be dependent upon consideration of various factors. Those factors include the following:

(1) A distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a formal code of doctrine and discipline; (5) a distinct religious history; (6) a membership not associated with any church or denomination; (7) an organization of ordained ministers; (8) ordained ministers selected after completing prescribed studies; (9) a literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for religious instruction of the young; [and] (14) schools for the preparation of its ministers. *Id.* at 1286–87 *citing* Speech of Jerome Kurtz, IRS Commissioner, at PLI Seventh Biennial Conference on Tax Planning, Jan. 9, 1978, *reprinted in* Fed. Taxes (P–H) para. 54,820 (1978).

Of course, all fourteen factors need not be answered affirmatively in favor of there being a church for a religious organization to be classified as a church. Neither must there necessarily be a numerical majority. Mechanical evaluation is not the process to be used. Rather, the facts of each case are to be considered in their respective context and considered in light of these factors before us. *See id.* Engaging in this analysis convinces us that Nampa Christian is not a church.

The purpose behind Nampa Christian is not so much to declare a specific body of doctrine, as it is to provide students with a religious education that supports the body of doctrine with which a wide number of fundamentalist churches can agree. Thus, the fourth factor weighs against Nampa Christian being a "church."

We likewise find no evidence of a definite ecclesiastical government nor a membership unassociated with other churches [factors three and six]. In fact, participation in Nampa Christian is predicated in part upon an individual's membership in and contribution to a church of his or her choice. While worship does occur, and regularly, it is clear that it is done with the intent of strengthening the students and helping them to prepare for service on be-

half of their communities and the "Risen Saviour." Ex. No. 19.[6]

The school does not use "ordained ministers" [factors seven and eight]. A tenet of the School's Statement of Faith, in fact, is that the school remain nondenominational. *See* footnote 1, *supra.* Considering the factors mentioned above, we are convinced that Nampa Christian is not a church for purposes of I.C. § 72–1316A(g)(1)(i).

### B. *Nampa Christian is Operated Primarily for Religious Purposes and is Principally Supported By an Association of Churches.*

As is true for the word "church," no definition of the term "convention or association of churches" exists in the Idaho Code or in case law. As mentioned above, *see* Part II.A., *supra,* this Court considered the issue in *Allied Christian Forces, supra,* 105 Idaho at 314–15, 669 P.2d at 203–04, but did not need to define the term in order to decide the case.

Now that we are required to define the term, we are persuaded by the definition proposed by the defendants in that case. This Court articulated the defendants' definition in the following manner:

> [Allied], on the other hand, has argued that "association," as used in I.C. § 72–1316A(g)(1), should be given a broader definition, that being: *"The act of associating, or the state of being associated;*

*fellowship; combination for a common purpose,"* quoting Britannica World Language Edition of Funk & Wagnalls New Practical Standard Dictionary. *Thus, [Allied] argues that the term applies to "a cooperative undertaking by churches of differing denominations,"* quoting Rev.Rul. 74–224, 1974–1, C.B. 61. *Id.* at 314, 669 P.2d at 203 (emphasis added).

■ Under this definition, it is clear that the several different churches which are united by their relationship to Nampa Christian constitute an "association of churches" for purposes of I.C. § 72–1316A(g)(1)(ii). *But see, Lutheran Social Service, supra,* 758 F.2d at 1287–88. The question we turn to, then, is whether Nampa Christian (1) is "an organization operated primarily for religious purposes"; and (2) whether it is "operated, supervised, controlled or principally supported" by this association of churches. *See* I.C. § 72–1316A(g)(1)(ii). We hold that it satisfies both questions.

The evidence shows that Nampa Christian is operated for religious purposes. Our extensive review of the school's intent and operations reveals that it is a school with a religious mission and purpose. It therefore qualifies as an "organization operated primarily for religious purposes." *Id.*[7]

---

**6.** The superintendent's letter to parents who are considering or have decided to enroll their children in the school states Nampa Christian's purpose in the following manner:

> We at Nampa Christian are glad you are considering or have decided to have us assist you with your God given responsibility for *your child's* religious up-bringing in a CHRIST-CENTERED SCHOOL. For sixty-seven (67) years this has been happening at Nampa Christian and we are dedicated to its continuing until our LORD returns. As you read and complete this application, you will see that our basic purpose for existing (and the reason God has prospered us for the last 67 years) is to assist the children of Christian parents and/or Christian young people to become prepared to serve our RISEN SAVIOR. The teachers and support staff form our fully accredited high school and new modern elementary are ready and able to provide a CHRIST-

CENTERED, *quality,* EDUCATION. Ex. No. 29.

In another place, the school declares:

> We believe that the education of children is the responsibility of parents. The school exists as an extension of the home to assist the parents with this responsibility. All instruction must have the Bible as its base. Its main purpose is to assist parents to bring their children into conformity with God's revealed will so that every man may be presented perfect before Christ. The child needs to be prepared to be a productive member of society and the body of Christ. Ex. No. 23, p. 2.

**7.** We need not define the term "religious." The Department of Employment implicitly conceded as to Nampa Christian's religious nature when it argued in its brief that Nampa Christian is not protected by the First Amendment because that amendment does not apply "to *religious organizations* which are not churches, denom-

In its brief before the Industrial Commission, the Department articulately argued that there is no evidence in the record which shows that Nampa Christian is operated, supervised, or controlled by the various churches which have members attending the school. Department's Brief, pp. 10–13. We agree. We disagree with the Department's argument, however, that the school is not *principally* supported by this group of churches.

The Department argued that because only a small fraction of Nampa Christian's revenue comes from local churches, the school is not "principally supported" by these churches. The Department dismissed as "unpersuasive" Nampa Christian's argument that without the moral support of these churches "the school would cease to exist." Ex. No. 17, p. 3. We disagree.

The statutory language of I.C. § 72–1316A(g)(1)(ii) does not require a church's or group of churches' support to be *financial* in order for that to be recognizable under the statute. The statute merely states "support." While a contribution of money is strong indicia of one's support, it cannot be held, statutorily, to be the *only* way in which to support an organization. There is no logical reason to differentiate between the *types* of support an organization may receive. Likewise, there is no statutory command to do so. The key is the *quality* of the support. Section 72–1316A(g)(1)(ii) requires the organization to be *"principally"* supported by a church or group of churches in order for it to qualify for the tax exception. Such is the case here.

The Commission made the finding of fact that *"Nampa Christian could not exist as a private school without the moral support of those several churches."* R., Vol. 2, p. 14 (emphasis added). Substantial and competent evidence supports this finding. We therefore may not set aside this finding of fact. *Johnson v. Amalgamated Sugar Co.*, 108 Idaho 765, 768, 702 P.2d 803, 806 (1985); *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 900, 591 P.2d 143, 147 (1979). We hold that this type of support constitutes "principal" support—if the school *"could not exist"* without the churches' support, it is dependent upon that support. Such dependency constitutes "principal" support for purposes of I.C. § 72–1316A(g)(1)(ii).

Our holding today is not broad. It does *not* mean that mere moral support offered by a church or group of churches to an organization operated for religious purposes will qualify that organization for tax exemption status under Idaho's Employment Security Act. Rather, our decision states that before tax exemption status can be granted, the Commission must find as fact that such support is necessary for the religious organization's continued operation. Furthermore, substantial and competent evidence must be in the record to support that finding. Because these qualifying conditions exist here, we affirm the Industrial Commission's decision that Nampa Christian is not required to pay unemployment taxes under I.C. § 72–1301 *et seq.* We do so, however, upon the basis of the exception found in § 72–1316A(g)(1)(ii) and not upon constitutional grounds. We

---

inations, or sects." Appellant's Reply Brief, p. 2. In its brief before the Industrial Commission, the Department likewise stated:

> While one could argue that the "primary purpose" of the appellant is educational rather than religious, it is also arguable that the appellant's religious purposes are so interwoven with the educational goals that such religious purposes could be considered a primary purpose. Department's Brief, p. 9.

We note, however, that courts and commentators alike have struggled to adequately define the term "religion." *See, e.g., United States v.*

*Seeger,* 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); *Africa v. Commonwealth of Pennsylvania,* 662 F.2d 1025 (3d Cir.1982), *cert. denied,* 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982); K. Greenawalt, *Religion as a Concept in Constitutional Law,* 72 Calif.L.Rev. 753 (1984); G. Freeman, *The Misguided Search for the Constitutional Definition of 'Religion',* 71 Geo.L.J. 1519 (1983); F. Choper, *Defining 'Religion' in the First Amendment,* 1982 U.Ill.L.Rev. 579.

therefore affirm the result reached by the Commission.

No costs or attorney's fees.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in the result.