Colorado Court of Appeals Opinions || December 31, 2015


Colorado Court of Appeals -- December 31, 2015
2015 COA 182. No. 15CA0046. A Child's Touch v. Industrial Claim Appeals Office of the State of Colorado.



 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 182

 
 



 Court of Appeals No. 15CA0046
 Industrial Claim Appeals Office of the State of Colorado
 DD No. 5975-2014


 A Childâs Touch,

 Petitioner and Cross-Appellee,

 v.

 Industrial Claim Appeals Office of the State of Colorado,

 Respondent,

 and

 Robert L. Morris,

 Respondent and Cross-Appellant.


 ORDER AFFIRMED

 Division IV
 Opinion by JUDGE ROMÃN
 Ney*, J., concurs
 Graham, J., dissents

 Announced December 31, 2015


 Robert A. Lees & Associates, Robert A. Lees, Michael J. McNally, Jenna J. Sveen Gyorfi, Greenwood Village, Colorado, for Petitioner and Cross-Appellee

 No Appearance for Respondent Industrial Claim Appeals Office

 King & Greisen, LLP, Paula Greisen, Kimberly J. Jones, Denver, Colorado, for Respondent and Cross-Appellant

 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Â§ 5(3), and Â§ 24-51-1105, C.R.S. 2015.


 
 Â 

 
 Â¶1Â Â Â Â Â Â Â Â  In this unemployment compensation benefits case, petitioner, A Childâs Touch, seeks review of a final order of the Industrial Claim Appeals Office (Panel) holding that its former employee, claimant Robert L. Morris, was entitled to benefits because he was engaged in covered employment when A Childâs Touch terminated his employment in September 2013. We conclude that A Childâs Touch does not meet the statutory criteria for exemption from the
 
 Colorado Employment Security Act (CESA), Â§Â§ 8-70-101 to 8-84Â­108, C.R.S. 2015, because it is neither âoperated, supervised, controlled, or principally supported by a church or convention or association of churchesâ nor an âelementary or secondary schoolâ within the meaning of section 8-70-140(1)(a), C.R.S. 2015. We therefore affirm the Panelâs decision.
 
 I. Background
 
 Â¶2Â Â Â Â Â Â Â Â  A Childâs Touch is a state-licensed child care center providing infant and toddler day care, preschool, and kindergarten programs for children from six weeks to six years of age, and a summer camp for children ages six to twelve years.
 
 Â¶3Â Â Â Â Â Â Â Â  Christian-themed iconography, prayers, and devotions are incorporated into its daily curriculum. Students recite the pledge ofÂ allegiance to both the United States flag and a Christian flag. Religious-themed activities are incorporated, including art projects depicting religious scenes, the reading of Bible stories, and religious-themed counting lessons. A Childâs Touch maintains a seasonally-inspired âcreation stationâ at which children can interact with models and images depicting Bible scenes such as Noahâs Ark, Christâs Resurrection, and the Christmas Nativity. In addition, Christian holidays are celebrated through activities such as a âHappy Birthday Jesusâ party during the Christmas season, the reÂ­enactment of the Easter story, and the baking of âresurrection biscuits.â A Childâs Touch also promotes its Christian-based education on its outdoor sign and Ten Commandments stone tablet. It joined the Association of Christian Schools International (ACSI) in 2013, and, a year later, in 2014, after claimantâs termination, gained ACSI accreditation.


 
 Â¶4Â Â Â Â Â Â Â Â  In addition to A Childâs Touch being licensed as a child care center by the Department of Human Services, its kindergarten is licensed by the Colorado Department of Education, and children spend most of their days engaged in academic pursuits such as preparation for reading, writing, math, and science.


 Â¶5Â Â Â Â Â Â Â Â  A Childâs Touch was partially controlled by the Maranatha Christian Church, which had the authority to âsellâ A Childâs Touch. However, that relationship ended when the church ceased operations in 2011.[1]

 
 Â¶6Â Â Â Â Â Â Â Â  A Childâs Touch is run by a board of directors. Members of the board have included the founder of A Childâs Touch, his wife and daughter, and an ordained minister who has not served as pastor of any particular church since before claimantâs termination. In 2014, after claimantâs termination, A Childâs Touch added the pastor of Thrive Church to its board of directors.
 
 Â¶7Â Â Â Â Â Â Â Â  Claimant served as a maintenance worker at A Childâs Touch from approximately 1997 until his termination in September 2013. In September 2013, claimant took a medical leave for double hip replacement surgery. His position was eliminated during his absence. When he filed for unemployment compensation benefits, A Childâs Touch challenged his request on the ground that he wasÂ not in covered employment and that it was exempt from unemployment compensation taxes under CESA because it is a religious organization. See Â§ 8-70-140(1)(a).


 
 Â¶8Â Â Â Â Â Â Â Â  After conducting two hearings and reviewing numerousm exhibits, the hearing officer was persuaded that A Childâs Touch operated primarily for religious purposes and was principally supported by a church or association of churches. See Â§ 8-70Â­140(1)(a). The hearing officer denied claimantâs claim for unemployment compensation benefits.
 
 Â¶9Â Â Â Â Â Â Â Â  A divided Panel set aside the hearing officerâs decision, holding that, although the evidence established that A Childâs Touch operated primarily for religious purposes, the evidence did not support the hearing officerâs finding that A Childâs Touch is âprincipally supportedâ by an association of churches. Because this conclusion would disqualify A Childâs Touch from the CESA exemption, the Panel went on to consider whether A Childâs Touch qualified for the exemption on an alternative basis, namely as an elementary school that is operated primarily for religious purposes. The majority of the Panel then found that A Childâs Touch was not an elementary school within the meaning of section 8-70-140(1)(a)Â either, and thus did not qualify for the unemployment compensation tax exemption.


 
 II. Issues on Appeal
 
 Â¶10Â Â Â Â Â Â Â Â  A Childâs Touch contends that the Panel misinterpreted the evidence and the applicable statute. Specifically, it asserts that (1) it was âprincipally supportedâ by an association of churches during the period in question; and (2) the Panel misconstrued section 8-70-140(1)(a) by excluding facilities, such as A Childâs Touch, which offer kindergarten but include no higher grades, from fitting within the meaning of âelementary school.â
 
 Â¶11Â Â Â Â Â Â Â Â  Claimant agrees with the outcome of the Panelâs decision, but cross-appeals the Panelâs determination that A Childâs Touch operates primarily for religious purposes. He contends that because students at A Childâs Touch spend the majority of their time pursuing nonreligious, secular academics, A Childâs Touchâs primary activity is education, not religion.
 
 Â¶12Â Â Â Â Â Â Â Â  We conclude that A Childâs Touch is neither principally supported by a church or association of churches nor an elementary school within the meaning of section 8-70-140(1)(a). Accordingly, we hold that the Panel correctly determined that AÂ Childâs Touch is not entitled to a religious exemption from unemployment compensation taxes under CESA.


 
 III. Standard of Review
 
 Â¶13Â Â Â Â Â Â Â Â  We are bound by the hearing officerâs factual findings if they are supported by substantial evidence in the record. Goodwill Indus. v. Indus. Claim Appeals Office, 862 P.2d 1042, 1046 (Colo. App. 1993).
 
 Â¶14Â Â Â Â Â Â Â Â  However, we are not bound by the hearing officerâs or Panelâs determinations of ultimate facts. Samaritan Inst. v. Prince-Walker, 883 P.2d 3, 9 (Colo. 1994). âUltimate conclusions of fact . . . are conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine the rights and liabilities of the parties. . . . [A]n ultimate conclusion of fact is as a general rule phrased in the language of the controlling statute or legal standard.â Federico v. Brannan Sand & Gravel Co., 788 P.2d 1268, 1272 (Colo. 1990).
 
 Â¶15Â Â Â Â Â Â Â Â  Thus, while we are bound by any findings the hearing officer made concerning A Childâs Touchâs activities if those findings are substantially supported by evidence in the record, neither we nor the Panel is bound by the hearing officerâs ultimate conclusions thatÂ A Childâs Touch operates primarily for religious purposes or that A Childâs Touch is principally supported by an association of churches. See Samaritan Inst., 883 P.2d at 9.


 
 Â¶16Â Â Â Â Â Â Â Â  Moreover, we review the Panelâs legal conclusions de novo. See Bell v. Indus. Claim Appeals Office, 93 P.3d 584, 586 (Colo. App. 2004). In particular, we âreview questions of statutory construction de novo.â Mounkes v. Indus. Claim Appeals Office, 251 P.3d 485, 487 (Colo. App. 2010).
 
 IV. Section 8-70-140(1)(a)
 
 Â¶17Â Â Â Â Â Â Â Â  The statute at issue, section 8-70-140(1)(a), states that for purposes of CESA:
 
 Â¶18Â Â Â Â Â Â Â Â  â[E]mploymentâ does not include services performed:
 
 (a) In the employ of a church or a convention or association of churches or in the employ of an organization that is operated primarily for religious purposes and that is operated, supervised, controlled, or principally supported by a church or convention or association of churches or in the employ of an elementary or secondary school that is operated primarily for religious purposes.
 
 Â¶19Â Â Â Â Â Â Â Â  Accordingly, to qualify for the CESA exemption, A Childâs Touch must be either:
 
 (1) a church or a convention or association of churches,
 
 (2) an organization that is operated primarily for religious purposes and that is operated, supervised, controlled, or principally supported by a church or convention or association of churches, or
 
 (3) an elementary or secondary school that is operated primarily for religous purposes.


 Â¶20Â Â Â Â Â Â Â Â  A Childâs Touch argues that it qualifies under both the second and third categories. We agree with the Panel and the hearing officer that A Childâs Touch is operated primarily for religious purposes[2] within the meaning of section 8-70-140(1)(a), which is a requirement for both the second and third categories. For A Childâs Touch to qualify for the CESA exemption, we must also agree with it either (a) that it is principally supported by a church or convention or association of churches,[3] or (b) that it is an elementary school.

 
 A. Principally Supported by an Association of Churches
 
 Â¶21Â Â Â Â Â Â Â Â  A Childâs Touch contends that the Panel erroneously concluded that it is not âprincipally supported by [an] association of churches.â It argues that the evidence established that it receives support from several churches, and that this support is sufficient to meet the statutory requirement. See Â§ 8-70-140(1)(a). In particular, it cites to testimony that members of churches serve on its board, âoffer prayer support, spiritual advice and guidance,Â provide referrals, and promote and market the school to their congregations.â


 
 Â¶22Â Â Â Â Â Â Â Â  Reviewing the record as a whole, we are not convinced that A Childâs Touch was principally supported by an association of churches when claimant was discharged in September 2013.
 
 Â¶23Â Â Â Â Â Â Â Â  To establish âprincipalâ support, the entity seeking exemption from unemployment compensation taxes must establish that it ââcould not existâ without the churchesâ support, in other words, it is dependent upon that support. Such dependency constitutes âprincipalâ support for purposes of [the parallel Idaho act].â Nampa Christian Sch. Found., Inc. v. State, 719 P.2d 1178, 1184 (Idaho 1986). A Childâs Touch did not meet this burden.
 
 Â¶24Â Â Â Â Â Â Â Â  The evidence presented showed only minimal association between A Childâs Touch and any church during the critical period surrounding claimantâs termination. See Â§ 8-70-103(2), C.R.S. 2015; Â§ 8-73-102, C.R.S. 2015 (claimantâs unemployment compensation benefit is based on wages earned within the year and a half preceding his initial claim).
 
 Â¶25Â Â Â Â Â Â Â Â  A Childâs Touch did not establish that it required the support of any church to continue operating when it terminated claimantâsÂ employment. To the contrary, the evidence established that Maranatha Christian Church, which had asserted some level of control over A Childâs Touch, ceased to exist several years before claimantâs termination and was not supporting A Childâs Touch at the time of claimantâs termination. See Unity Christian Sch. of Fulton, Ill. v. Rowell, 6 N.E.3d 845, 852-53 (Ill. App. Ct. 2014) (principal support exemption not established because the fact that the school was run out of the basement of a church when it started ninety-two years earlier failed âto demonstrate how the school is currently supported principally by the churchesâ and evidence instead showed school was presently a separately incorporated entity in a separate building with a constitution that states it is not affiliated with any ecclesiastical body).


 
 Â¶26Â Â Â Â Â Â Â Â  And while A Childâs Touch secured ACSI accreditation, that did not happen until after claimant was terminated. Moreover, the evidence showed that although the former pastor of the defunct Maranatha church was once on A Childâs Touchâs board, he was no longer serving as a pastor when A Childâs Touch terminated claimant. Further, although the hearing officer noted that A Childâs Touchâs âcurrent board chairman is a [minister] withâ a localÂ church, the composition of A Childâs Touchâs board at the time of the hearing was not at issue in May and September of 2014. Rather, the critical period was at the time of claimantâs termination in September 2013. Finally, the evidence established that the pastor on A Childâs Touchâs board at the time of the hearing did not join the board until 2014, long after claimantâs departure. In short, a snapshot of the period in which claimant was terminated does not establish that A Childâs Touch was principally supported by a church or association of churches. See Nampa Christian Sch., 719 P.2d at 1184.


 
 Â¶27Â Â Â Â Â Â Â Â  The other factual finding cited by the hearing officer likewise provides only tenuous support for his conclusion that A Childâs Touch was principally supported by an association of churches. The hearing officer found that various churches âpromoteâ A Childâs Touch âto their individual members,â and that A Childâs Touch ârelies on families being referred by the various churches in the area to keep operating.â But the testimony from which the hearing officer drew this finding did not clearly establish this. The testimony instead confirmed that churches refer some families to AÂ Childâs Touch, but never established that A Childâs Touch could not exist without those referrals.


 
 Â¶28Â Â Â Â Â Â Â Â  In the absence of evidence demonstrating that its operations at the time of claimantâs termination depended on such support, A Childâs Touch failed to show that the support of any church or churches was ânecessary for [its] continued operation.â Id. The level of support A Childâs Touch described during the period in question resembles the âmoral supportâ Nampa Christian Schools rejected as insufficient. See id. The key is the quality of support during the period in which claimant was terminated, September 2013. Here, although a church supported A Childâs Touch prior to claimantâs termination and the current board contains local pastors, we conclude that A Childâs Touch was not principally supported during the time period in which claimant was actually terminated.
 
 Â¶29Â Â Â Â Â Â Â Â  Therefore, we agree with the majority of the Panel that A Childâs Touch failed to establish that it was âprincipally supported by a church or convention or association of churches.â See Â§ 8-70Â­140(1)(a).


 
 Â¶30Â Â Â Â Â Â Â Â  Because we have concluded that A Childâs Touch is not an exempt organization under the second category described in section 8-70-140(1)(a), we are required to consider whether A Childâs Touch nonetheless qualifies for the religious exemption from CESA by falling into the third category: an elementary or secondary school that is operated primarily for religious purposes.
 
 B. Elementary School
 
 Â¶31Â Â Â Â Â Â Â Â  We also disagree with A Childâs Touchâs contention that the Panel erred by failing to find that it is an elementary school within the meaning of CESA. Â§ 8-70-140(1)(a). Specifically, we reject A Childâs Touchâs assertion that the inclusion of kindergarten in its curriculum necessarily makes it an âelementary schoolâ within the meaning of section 8-70-140(1)(a).
 
 Â¶32Â Â Â Â Â Â Â Â  CESA neither defines âelementary schoolâ nor clearly articulates the legislatureâs intended scope of the term. Without a statutory definition, dictionary definitions can guide us. âWhen a statute does not define its terms but the words used are terms of common usage, we may refer to dictionary definitions to determine the plain and ordinary meaning of those words.â Gagne v. Gagne, 2014 COA 127, Â¶29 (quoting Bachelor Gulch Operating Co. v. Bd. ofÂ Cty. Commârs, 2013 COA 46, Â¶25). Additionally, the context in which an undefined term is used âmay provide guidance as to legislative intent and the termâs proper meaning.â Fogg v. Macaluso, 892 P.2d 271, 274 (Colo. 1995).


 
 Â¶33Â Â Â Â Â Â Â Â  As pertinent here, Websterâs Third New International Dictionary 735 (2002) defines âelementary schoolâ as âA school in which elementary subjects (as reading, writing, spelling, and arithmetic) are taught to children from about six to about twelve years of age which in the U.S. covers the first six or eight grades.â In our view, this definition is not broad enough to include a child care facility which offers kindergarten within the ordinary meaning of âelementary school.â
 
 Â¶34Â Â Â Â Â Â Â Â  We find persuasive the statutory definition of a âchild care centerâ in the Human Services Code. There, it explains that a kindergarten is a child care center unless the kindergarten is âmaintained in connection with a public, private, or parochial elementary school system of at least six grades or operated as a component of a school districtâs preschool program . . . .â Â§ 26-6-102(1.5), C.R.S. 2015.[4] A Childâs Touch is indisputably not maintained in connection with a public, private, or parochial elementary school system of at least six grades nor operated as a component of a school districtâs preschool program. This provision, thus, supports the conclusion that the presence of a kindergarten class does not convert a child care facility into an âelementary schoolâ for the purpose of section 8-70-140(1)(a).


 
 Â¶35Â Â Â Â Â Â Â Â  Conversely, we are not persuaded by the statutes A Childâs Touch relies upon to support its proposed broad definition of âelementary school.â It points to Title 22, which defines âschool ageâ as âany age over five and under twenty-one years.â Â§ 22-1-115, C.R.S. 2015. Under the School Attendance Law of 1963, Title 22 provides that âevery child who has attained the age of six years on or before August 1 of each year and is under the age of seventeen years . . . shall attend public school.â Â§ 22-33-104(1)(a), C.R.S.Â 2015. However, neither of these statutes defines âelementary schoolâ and neither specifies that a child care facility which includes a kindergarten constitutes an elementary school.


 
 Â¶36Â Â Â Â Â Â Â Â  Other jurisdictions examining the meaning of âelementary schoolâ have concluded that a facility that offers preschool and kindergarten, but no grades beyond kindergarten, does not qualify as an âelementary school.â For example, in Commonwealth v. Burke, 687 N.E.2d 1279 (Mass. App. Ct. 1997), the Appeals Court of Massachusetts reversed a defendantâs conviction for drug offenses within a school zone because the school in question, a preschool, did not qualify as an âelementary schoolâ under the statute. Id. at 1282. Citing the definition contained in Websterâs Third New International Dictionary, the court held that âa kindergarten, together with a preschool, is not an elementary school.â Id. at 1281.
 
 Â¶37Â Â Â Â Â Â Â Â  The District Court of Appeal of Florida reached the same conclusion when it determined that a âkindergarten/preschoolâ is not an elementary school within the meaning of Floridaâs penal code. The court therefore affirmed the dismissal of charges against a defendant for purchasing illicit drugs âwithin 1,000 feet of the realÂ property comprising a public or private elementary, middle, or secondary school.â State v. Roland, 577 So. 2d 680, 681 (Fla. Dist. Ct. App. 1991).


 
 Â¶38Â Â Â Â Â Â Â Â  The Supreme Court of New Jersey followed this reasoning in vacating the conviction of a defendant charged with distributing drugs on the property of âany elementary or secondary school,â reasoning that the ten-student kindergarten class there did not âtransform a day care center into an elementary schoolâ for purposes of that statute. State v. Shelley, 15 A.3d 818, 820, 824 (N.J. 2011). The court recognized that while some definitions âlead to a conclusion that an elementary school generally includes the first six to eight grades and may include a kindergarten program as an introduction to formal education, . . . none definitively establish[es] whether a kindergarten class, standing unconnected to other elementary grades, constitutes an âelementary school.ââ Id. at 820-21. And, further emphasizing the similarities with this case, the court observed that without higher grades, âthe essential character of [the facility] is a day care center.â Id. at 824.
 
 Â¶39Â Â Â Â Â Â Â Â  We are persuaded by the reasoning of Shelley, Burke, and Roland. Because section 8-70-140(1)(a) creates an exemption forÂ services performed âin the employ of an elementary . . . school . . .,â it is appropriate in this context to characterize the facility as a whole. See Fogg, 892 P.2d at 274. When so analyzing A Childâs Touch, it is apparent that it is more akin to a child care center than an elementary school.[5]


 
 Â¶40Â Â Â Â Â Â Â Â  We need not elucidate a comprehensive definition of âelementary schoolâ to conclude that A Childâs Touch does not fall within the âelementary schoolâ exception of section 8-70-140(1)(a). Thus, unlike the Panel majority, we do not conclude that an elementary school necessarily consists of first through sixth or first through eighth grades, or that kindergarten students are not elementary school students. Instead, it is sufficient in this case to conclude that an entire child care facility is not properly characterized as an âelementary schoolâ for unemploymentÂ compensation tax purposes simply because it happens to provide a kindergarten program for its oldest charges.


 Â¶41Â Â Â Â Â Â Â Â  We thus hold that a child care facility such as A Childâs Touch, which offers day care, preschool, and kindergarten, but does not teach any higher grades, is not an âelementary schoolâ for purposes of a religious exemption from unemployment compensation taxes under section 8-70-140(1)(a).

 V. Conclusion

 Â¶42Â Â Â Â Â Â Â Â  We therefore conclude that the majority of the Panel correctly held that A Childâs Touch did not meet the criteria for a religious exemption under section 8-70-140(1)(a).

 Â¶43Â Â Â Â Â Â Â Â  Accordingly, the Panelâs order is affirmed, and the case is remanded to the Division of Unemployment Insurance to determine claimantâs entitlement to and eligibility for unemployment compensation benefits.


 [1] Although 1992 and 2008 audits by the Division of Labor determined that A Childâs Touch was exempt from unemployment compensation taxation based on its association with Maranatha, the church ceased operations in 2011. Therefore, the previous audit results do not assist our analysis concerning claimantâs termination in 2013.

 [2] We note with approval the reasoning of the Illinois Court of Appeals in Unity Christian School of Fulton, Illinois v. Rowell, 6 N.E.3d 845, 852-53 (Ill. App. Ct. 2014) (âThe Departmentâs conclusion was based on a finding that Unityâs âcurriculum is primarily secular in nature.â Well, of course it is. Just like the curricula in every other parochial school in the state. But the primary purpose of the school is to teach those secular subjects in a faith-based environment.â).

 [3] The dissent asserts that our analysis of whether A Childâs Touch is âprincipally supported by . . . [an] association of churchesâ is âbeside the point.â Of course, this is only true if one concludes, as the dissent does, that the âelementary schoolâ test is met. But if a reviewing court concludes that A Childâs Touch is not an elementary school under section 8-70-140(1)(a), then it must â that is to say, we must â analyze the rest of section 8-70-140(1)(a) and consider whether A Childâs Touch still qualifies for the religious exemption under the analytically separate âprincipally supportedâ test. A Childâs Touch asserts that the Panel erroneously concluded that claimantâs work did not fall under either the second or the third statutory exemption from unemployment compensation coverage as services performed:

 [I]n the employ of an organization that is operated primarily for religious purposes and that is operated, supervised, controlled, or principally supported by a church or convention or association of churches or in the employ of an elementary or secondary school that is operated primarily for religious purposes.

 Â§ 8-70-140(1)(a) (emphasis added).

 [4] While this definition is drawn from the Child Care Licensing Act, which does not apply to âspecial schools or classes operated primarily for religious instruction,â A Childâs Touch, although operated primarily for religious purposes, is not operated primarily for religious instruction. According to the record, the curriculum was primarily academic and the religious component took up only about ten percent of the day. Additionally, A Childâs Touch is licensed as a child care center by the Department of Health.

 [5] We note that the dissent from the Panelâs decision pointed out that most designated âelementary schoolsâ in the five largest Colorado school districts do not include first through sixth or first through eighth grade. However, the dissent on the Panel and the dissent in this opinion drew on statistics that are not contained in the record; consequently, we cannot rely upon the statistics or the analysis flowing therefrom. See Armstrong v. Banking Bd. of Colo., 530 P.2d 1306, 1307 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)) (âAn appellate court is not at liberty to consider matters outside the record presented to it in its determination of any cause.â).

 Â 

 
 JUDGE NEY concurs.
 
 JUDGE GRAHAM dissents.


 Â 

 
 JUDGE GRAHAM, dissenting.
 
 Â¶44Â Â Â Â Â Â Â Â  I respectfully dissent from the majorityâs reasoning on three grounds. First, the majority concludes that A Childâs Touch (ACT) was not principally supported by a church, convention, or association of churches. A school does not have to be principally supported by an association of churches under the clear wording of the applicable statute, which plainly distinguishes between schools and other organizations operated primarily for religious purposes. Second, even if âprincipal supportâ was a prerequisite to ACT being excused from covered employment, the hearing officerâs findings of fact clearly show that there was principal support from churches. Third, seizing upon an argument never advanced by the claimant below, the majority concludes that ACT is not an elementary school. I conclude that ACT operates an elementary school because it is a part of the Colorado kindergarten through high school education system as established by the Colorado Educator Licensing Act of 1991.
 
 I. Background
 
 Â¶45Â Â Â Â Â Â Â Â  ACT is a licensed kindergarten, a privately owned 501(c)(3) corporation, and a member of the Association of Christian SchoolsÂ International. It is licensed by the State of Colorado. It has been designated as a religious school, after two separate audits by the Colorado Division of Unemployment Insurance and declared to be exempt from unemployment compensation insurance liability. ACT relies on referrals from a network of churches for students, and the hearing officer found that without those referrals ACT would not be able to continue operating. Contrary to the majorityâs conclusion that the record does not support the hearing officerâs finding, there is substantial evidence in the record supporting that finding. Both Mr. and Mrs. Grillo, principal owners of ACT, testified that ACT relied upon other churches for referrals and symbiotic support. Counsel asked Ms. Grillo specifically, âCould A Childâs Touch survive without the assistance of other churches?â She replied, âACT could not survive . . . .â She went on to explain that ACT relied upon other churches for referrals. The hearing officerâs finding is amply supported by testimony in the record.'Â 


 
 Â¶46Â Â Â Â Â Â Â Â  The parties do not dispute, as the Panelâs majority concluded and the majority here points out, that the school is operated primarily for religious purposes.
 
 II. The School Need Only Be Operated for a Religious Purpose
 
 Â¶47Â Â Â Â Â Â Â Â  I conclude that the majority misinterpreted the applicable statutory law because it conflated a school operated primarily for religious purposes with other organizations that are operated for religious purposes and operated, supervised, controlled, or principally supported by a church. The statute in question, section 8-70-140(1)(a), C.R.S. 2015, incorporates the language of 26 U.S.C. Â§ 3309(b)(1) (2012) (dealing with exemptions from the Internal Revenue Code) in fashioning an exemption from employment. The Colorado statute carves out an exception from the definition of employment where a person is employed by a
 
 church or a convention or association of churches or . . . an organization that is operated primarily for religious purposes and . . . is operated, supervised, controlled, or principally supported by a church or convention or [is employed by] an elementary or secondary school that is operated primarily for religious purposes.
 
 Â§ 8-70-140(1)(a).


 Â¶48Â Â Â Â Â Â Â Â  I interpret that statute by first looking to the plain words of the statute and ascribing to them their plain and unambiguous meanings. People v. Yascavage, 101 P.3d 1090, 1093 (Colo. 2004). âThe plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.â Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). âA statutory interpretation leading to an illogical or absurd result will not be followed.â Frazier v. People, 90 P.3d 807, 811 (Colo. 2004).

 
 Â¶49Â Â Â Â Â Â Â Â  The statute clearly creates two classes of exemption. First, an exemption is afforded to an organization that is operated, supervised, controlled, âor principally supported by a church or convention of churches.â Â§ 8-70-140(1)(a). Second, an exemption is afforded to âan elementary or secondary school that is operated primarily for religious purposes.â Id. For those schools falling within the second exemption, there is no additional requirement that they be operated, supervised, controlled, or principally supported by a church or convention of churches.
 
 Â¶50Â Â Â Â Â Â Â Â  Because there is no dispute here that ACT was operated primarily for religious purposes, it plainly qualifies for an exemptionÂ so long as it is also deemed to be an elementary school. Thus, the majorityâs concern over whether ACT met the principally supported test is simply beside the point.


 
 III. Nonetheless, ACT Was Principally Supported
 
 Â¶51Â Â Â Â Â Â Â Â  Although I reject any notion that ACT was required to be principally supported by a church or convention of churches in order to qualify for its exemption, the fact is that the hearing officer found it was principally supported.
 
 Â¶52Â Â Â Â Â Â Â Â  We must follow and apply the hearing officerâs factual findings if they are supported by substantial evidence in the record. Goodwill Indus. v. Indus. Claim Appeals Office, 862 P.2d 1042, 1046 (Colo. App. 1993). The hearing officer here found that ACT was accredited by the Association of Christian Schools International for its kindergarten program. ACT is a member of that Association. Importantly, âACT has been promoted by various churches in their area to their individual family members.â And the school ârelies on families being referred by the various churches in the area to keep operating.â These findings of fact are unrebutted and, in my view, establish without question that ACT is principally supported by churches. I acknowledge that neither the majority nor any partyÂ has supplied us with a definition of the words âprincipally supported,â but I reject any notion that they convey a requirement of financial support. I note that the majority does not assume a financial requirement either. It is enough for me that the hearing officer found sufficient support from community referrals and accreditation by the Association of Christian Schools International.


 
 Â¶53Â Â Â Â Â Â Â Â  I am not convinced nor am I bound by the majority Panelâs conclusion that there was ânothing in this evidence in support of A Childâs Touch or that there is a combination of churches providing support, financial or moral.â That conclusion simply ignores the record and because I review the Panel majorityâs conclusion de novo, I reject its conclusion as being contrary to substantial evidence. Bell v. Indus. Claim Appeals Office, 93 P.3d 584, 586 (Colo. App. 2004).
 
 Â¶54Â Â Â Â Â Â Â Â  Furthermore, the Panel majorityâs decision below did not assess whether ACT lacked principal support during any designated period at or near the time of claimantâs discharge. Yet the majority here rests its analysis on a conclusion, without factual support, that at the particular time claimant was discharged, ACT lacked principal support. There is nothing in the record to support thisÂ conclusion. On the contrary, ACT was an exempted religious school at all times pertinent, including that snapshot of time when claimant was discharged. Thus, the majorityâs conclusion that it was ânot convinced that A Childâs Touch was principally supported by an association of churches when claimant was dischargedâ is not based on any evidence in the record and is contrary to the hearing officerâs express findings.


 
 Â¶55Â Â Â Â Â Â Â Â  The referrals by churches, found by the hearing officer to be necessary for the schoolâs existence, were not assigned to any particular period. And, the majorityâs concern over ACTâs affiliation with Maranatha Christian Church has no bearing on the referrals by the network of churches. Also, contrary to the suggestion in the majorityâs first footnote, the change in affiliation with Maranatha Christian Church does not affect the significance of the ACTâs audit. It continues to operate as a 501(c)(3) tax-exempt organization and it satisfies all particulars of the Department of Labor exemption.
 
 IV. ACT Is an Elementary School
 
 Â¶56Â Â Â Â Â Â Â Â  Grasping an issue that was not raised before the hearing officer, the Panel majority added as an afterthought its opinion that it was âunaware of any legal authority defining âelementary schoolâÂ in the context of Â§ 8-70-140(1)(a) or similar statutes in other states.â Recognizing that the hearing officer did not rely on ACT being an elementary school in order to satisfy the third condition in section 8-70-140(1)(a), the Panel majority nevertheless singled out the testimony of one witness who stated that ACT is properly considered to be an elementary school because it was required to meet the Department of Educationâs requirements for kindergartens. The claimant never argued that ACT does not qualify for exemption because it is not an elementary school. But the Panel cited that as a reason why ACTâs school should be denied an exemption. The Panel majority concluded that an elementary school was limited to grades one through six. The majority here follows that view, but I reject it.


 
 Â¶57Â Â Â Â Â Â Â Â  As a licensed kindergarten, ACT instructs children in preparation for the elementary pursuits of reading, writing, math, and science. The General Assembly has declared that there are unmet needs in mathematics, science, and technology and has adopted a strategic plan for all prekindergarten through high school education. See Â§ 22-81-102, C.R.S. 2015. A general review of our public education system reveals that all early education in ColoradoÂ is considered to be either prekindergarten through grade twelve or kindergarten through grade twelve.


 
 Â¶58Â Â Â Â Â Â Â Â  Examiner Kroll points out in his dissent to the Panelâs order:
 
 Not many educators, students or parents in Colorado would be familiar with the definition of an elementary school as being limited to a school providing instruction in the âfirst six to eight years of formal education.â In the largest five school districts in the state (Jeffco Public Schools, Denver Public Schools, Douglas County School Dist., Cherry Creek School Dist., and Adams 12 School Dist.) there are 297 schools designated as âelementaryâ that fail to meet [the Panel majorityâs adopted definition].
 
 Â¶59Â Â Â Â Â Â Â Â  Citing several definitions, Examiner Kroll describes all schools in the context of primary and secondary education, with primary education being generally for children ages five through twelve.[2]
 
 The various pieces of legislation enacted by the General Assembly pertinent to education do not often have occasion to distinguish between strictly âelementary,â âsecondaryâ or other categories of school. As a result, the term âin the employ of an elementary or secondary schoolâ as used by Congress is not explicitly defined in the state statutes. However, two pieces of education legislation do appear significant in revealing the legislatureâs understanding of the category of elementary and secondary schools. Section 22-1-115 C.R.S. defines âschool ageâ as âany age over five and under twenty one years.â Section 22-1Â­114 requires that any person operating a private school may be required to provide the local school board information pertaining to any student âof school ageâ in attendance at their school.


 
 Â¶60Â Â Â Â Â Â Â Â  He further points out that the Compulsory School Attendance statute, section 22-33-104, C.R.S. 2015, requires that children who have turned age six prior to August 1, and are under the age of seventeen, are required to attend public schools. And, that statute refers to categories of pupils as elementary and secondary. Elementary school pupils include kindergarten pupils. See Â§ 22-33-104(1)(a)(II) (kindergartens are one of the elementary schools for which an exception to the hours of attendance is made).
 
 Â¶61Â Â Â Â Â Â Â Â  Although there is no specific Colorado legislation that defines âelementary schools,â I believe that most parents in Colorado, as well as the Department of Education and the General Assembly, would consider Coloradoâs primary and secondary education system to include âkindergarten through grade twelve.â I therefore resistÂ the majorityâs attempt to cite cases from other state jurisdictions for the proposition that a Colorado kindergarten is something other than an elementary school. State v. Roland, 577 So. 2d 680, 681 (Fla. Dist. Ct. App. 1991); Commonwealth v. Burke, 687 N.E.2d 1279 (Mass. App. Ct, 1997); and State v. Shelley, 15 A.3d 818 (N.J. 2011), are not persuasive because they deal with foreign educational systems that are unique to their respective states and have no precedential value or relevance to Coloradoâs system.


 Â¶62Â Â Â Â Â Â Â Â  The majority relies upon section 26-6-102(1.5), C.R.S. 2015, of the Human Services Code in concluding that ACT was not an elementary school. But that code deals with child care centers â not schools â and has no relevance to the issues raised by claimant in his appeal. That code was not argued below nor was it considered by the majority of the Panel. Section 26-6-103(1)(a), C.R.S. 2015, of that code plainly states that the code does not apply to âschools . . . operated primarily for religious instruction . . . .â

 Â¶63Â Â Â Â Â Â Â Â  For all of these reasons, I respectfully dissent and would overturn the Panel majorityâs final order reversing the hearing officerâs decision.


 [1]Â The testimony of Mr. Grillo corroborated that of his wife. He explained that the referral of families by a network of churches âequates to dollars and cents . . . in our financial statements.â

 [2] The majority criticizes my citing to Examiner Krollâs dissent, stating that he drew upon statistics that were not in the record. However, it is apparent to me that he took administrative notice of statistics that were within the Panelâs and Department of Laborâs purview under the relaxed standards of administrative review. Consequently, I see no harm in recognizing the efficacy of his observations.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || December 31, 2015


Back